IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MIKESHA MARTINEZ, et al.,

    Plaintiffs,

  v.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.
                                        /

No. C 09-02306 CW

ORDER CLARIFYING INJUNCTION AND DENYING PLAINTIFFS' MOTION FOR CIVIL CONTEMPT SANCTIONS

On June 26, 2009, the Court enjoined and restrained Defendants from implementing California Welfare and Institutions Code § 12306.1(d)(6) without first conducting the analysis required by 42 U.S.C. § 1396a(a)(30)(A), as described in Orthopaedic Hospital v. Belshe, 103 F.3d 1941, 1943 (9th Cir. 1997). Plaintiffs have now filed a motion for civil contempt sanctions, or in the alternative, for a more specific injunction. In this motion, Plaintiffs assert that State Defendants[1] refuse to permit counties that want to maintain their pre-§ 12306.1(d)(6) wage rates for In-Home Support Services (IHSS) to do so. Defendants argue that the injunction does not require the State immediately to reinstate the

---

[1] State Defendants include Governor Arnold Schwarzenegger, Director of the California Department of Social Services John A. Wagner and Director of the California Department of Health Care Services David Maxwell-Jolly.

pre-§ 12306.1(d)(6) wage rate.  Defendants assert that any county that wishes to set its rate to the pre-§ 12306.1(d)(6) level must submit a Rate Change Request, which can take up to approximately sixty days to implement.  After having considered the papers filed by the parties, the Court clarifies its injunction and denies Plaintiffs' motion for contempt sanctions.

BACKGROUND

On February 20, 2009, the Governor signed into law California Welfare and Institutions Code § 12306.1(d)(6).  Under this law, the State's maximum contribution to wages and benefits would have been reduced from sixty-five percent of the non-federal share of an hourly rate of $12.10 to sixty-five percent of the non-federal share of an hourly rate of $10.10.  The latter rate represents $9.50 for wages and $0.60 for benefits.

On April 2 and May 1, 2009, the California Department of Social Services (CDSS), the agency that administers the IHSS program, issued notices to counties regarding § 12306.1(d)(6).  These notices "inform[ed] counties how this change will be implemented."  Leyton Supp. Decl., Ex. A.  The April notice stated, "Counties must submit a PA Rate Change Request to reduce the wages and health benefits to the $10.10 state participation level no later than May 1, 2009 to be within the 60-day approval process timeline."  Id.  The May notice similarly stated, "Counties currently providing wages and individual health benefits above $10.10 must submit a PA Rate Change Request to reflect the change in the maximum amount in which the state will participate."  Id., Ex. B.  The May notice also extended the May 1, 2009 deadline to June 1, 2009.  Through these notices, State Defendants told

2

counties that, as of July 1, § 12306.1(d)(6) required counties to submit new Rate Change Requests because CDSS's prior approvals of rates above $10.10 would no longer be valid for reimbursement by the State. If a county did not reduce wages and benefits to $10.10 or below, it would have to make up the difference between the State's current contribution and the county's rate.

Upon receipt of these notices, at least thirteen counties submitted Rate Change Requests seeking to reduce IHSS provider wages. Although CDSS claims that the process to approve a Rate Change Request could take up to sixty days, CDSS approved these requests expeditiously. In at least two instances, CDSS approved Rate Change Requests in one week.

The Court issued its injunction in this case on June 26. On June 30, 2009, State Defendants sent an All-County Notice. The notice stated,

> This All County Information Notice notifies counties of the recent court order in the case of Martinez v. Schwarzenegger.
>
> On February 20, 2009, Senate Bill X3 6 (Chapter 13, Statutes of 2009) was enacted, which amended Welfare and Institutions Code section 123-6.1 to reduce the maximum state participation in negotiated In-Home Supportive Services individual provider wages and benefits from $12.10 per hour to $10.10 per hour. This reduction was to take effect on July 1, 2009. On June 26, 2009, the federal district court for the Northern District of California issued an injunction prohibiting the department and other state agency defendants from implementing the above reduction in maximum state participation. The maximum state participation in wages and benefits will remain at $12.10 per hour as long as the injunction remains in effect.

Leyton Supp. Decl., Ex. G. The notice provides no information regarding how counties that had submitted rate change requests in response to § 12306.1(d)(6) could ensure that the pre-July 1, 2009 rates would remain in effect in light of the Court's injunction.

On July 3, 2009, CDSS issued an errata to all counties "to

3

provide additional clarification regarding" the effect of the Court's injunction on the rate change process. The notice stated,

> The Rate Change Requests that were submitted by Public Authorities and approved by the California Department of Social Services (CDSS) and the Department of Health Care Services (DHCS) remain in effect until counties submit new Rate Change Requests through the process outlined in Welfare and Institutions Code Section 12306.1 and CDSS and DHCS approve those requests.

Id., Ex. T. Since the Court's injunction, nine of the thirteen counties that reduced their wages and benefits after § 12306.1(d)(6) was enacted have submitted Rate Change Requests to return to the pre-§ 12306.1(d)(6) level.[2]

In response to the requests, State Defendants have informed the counties that the requests can take up to sixty days to process. Carrol Decl. at ¶ 7; see also, Mancini Decl. at ¶ 8; McDevitt Supp. Decl., Ex. I; Malberg Supp. Decl. at ¶ 4; Leyton Supp. Decl., Ex. L. In some communications, State Defendants have asserted that they will work as "expeditiously" as possible on processing the requests, Carrol Decl. At ¶ 7, and in other communications they have stated that they will process them according to "normal" procedures. Leyton Decl. ¶ 13. State Defendants dispute Plaintiffs' assertion that the injunction requires them to ensure that the pre-§ 12306.1(d)(6) rates remain in effect for the duration of the preliminary injunction.

## DISCUSSION

The Court may issue a contempt order if Defendants "(1) [] violated the court order, (2) beyond substantial compliance,

---

[2] Those nine counties are Alameda, Contra Costa, Mendocino, Napa, Placer, San Mateo, Santa Barbara, Solano and Yolo.

4

1  (3) not based on a good faith and reasonable interpretation of the
2  order, and (4) by clear and convincing evidence." In re Dual-Deck
3  Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th
4  Cir. 1993).  The moving party must demonstrate by clear and
5  convincing evidence that the alleged "contemnors violated a
6  specific and definite order of the court." Stone v. City and
7  County of San Francisco, 968 F.2d 850, 856 (9th Cir. 1992).  The
8  contempt "need not be willful, and there is no good faith exception
9  to the requirement of obedience to a court order." In re Dual
10 Deck, 10 F.3d at 695.

11     While the Court does not find State Defendants in contempt of
12 the Court's preliminary injunction order, their manner of
13 compliance has not carried out the intent of the order.
14 Apparently, the Court's order was not sufficiently specific.  The
15 Court scheduled the hearing on the preliminary injunction for June
16 25 so that before July 1 all those concerned -- the State, the
17 counties, the providers and the elderly and disabled consumers --
18 would know what rate would be applied to hours worked on or after
19 July 1.  At the hearing, the Court issued its order from the bench,
20 with a written order following on June 26, so that all those
21 concerned would know that, as of July 1, the rate could not be
22 reduced based on § 12306.1(d)(6).  The Court declined to be more
23 specific in ordering the State exactly how to achieve this result,
24 not because the Court did not intend that the result obtain, but
25 only in deference to the State's presumed ability to determine how
26 best to accomplish the result without unintended consequences.  The
27 Court's approach was apparently ineffective.  Accordingly, the
28 Court now clarifies that the State Defendants shall, by the close

of business on July 14, 2009,[3] rescind the State's approval of all county rate reduction requests which were submitted after February 20, 2009, to be effective July 1, 2009, and reinstate the State's approval of the pre-July 1 rates. The State shall notify each affected county of these action, using a method designed to ensure that the notification is received on July 14. At the same time, the State will notify these counties that it will pay sixty-five percent of the non-federal share of the pre-July 1, 2009 rate up to $12.10 for hours worked on July 1 and thereafter, until such time as the Court's preliminary injunction is rescinded. The State shall include a copy of the Court's amended injunction in its communication to the counties. The State may notify the counties that they may submit new Rate Change Requests if they wish to pursue a rate change for reasons other than the passage of § 12306.1(d)(6).[4]

IT IS SO ORDERED.

Dated: 07/13/09

CLAUDIA WILKEN
United States District Judge

---

[3] Immediate action is required because the pay period ends on July 15.

[4] It is not clear from the papers submitted by the parties whether Fresno County submitted one Rate Change Request with a second reason for the request other than the passage of § 12306.1(d)(6) or if it submitted two requests. If it submitted only one request, it must submit a separate request based on a reason other than § 12306.1(d)(6) if it wishes to pursue a rate reduction.