IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MIKESHA MARTINEZ, et al.,

    Plaintiffs,

   v.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.

No. C 09-02306 CW

ORDER FURTHER CLARIFYING INJUNCTION

On June 26, 2009, the Court enjoined and restrained Defendants from implementing California Welfare and Institutions Code § 12306.1(d)(6) without first conducting the analysis required by 42 U.S.C. § 1396a(a)(30)(A), as described in <u>Orthopaedic Hospital v. Belshe</u>, 103 F.3d 1941, 1943 (9th Cir. 1997).  In response to Plaintiffs' motion for civil contempt sanctions, or in the alternative, for a more specific injunction, the Court issued an order clarifying the injunction.  The Court ordered that "State Defendants shall, by the close of business on July 14, 2009, rescind the State's approval of all county rate reduction requests which were submitted after February 20, 2009, to be effective July 1, 2009, and reinstate the State's approval of the pre-July 1 rates."  Amd. Prelim. Inj. at 1.  The Court also stated, "The State may notify the counties that they may submit new Rate Change

Requests if they wish to pursue a rate change for reasons other than the passage of § 12306.1(d)(6)." Order Clarifying Inj. at 6. With respect to Fresno County, the Court noted,

> It is not clear from the papers submitted by the parties whether Fresno County submitted one Rate Change Request with a second reason for the request other than the passage of § 12306.1(d)(6) or if it submitted two requests. If it submitted only one request, it must submit a separate request based on a reason other than § 12306.1(d)(6) if it wishes to pursue a rate reduction.

Id. at 6 n.4.

Although the order clarifying the injunction specifically instructed State Defendants to "rescind the State's approval of <u>all</u> county rate reduction requests which were submitted after February 20, 2009," (emphasis added) California Department of Social Services (CDSS) official Eileen Carroll instead contacted several counties to see if they wanted to revert to the pre-July 1, 2009 wage. Officials of Fresno County and Santa Barbara County indicated that they did not want return to the pre-July 1 wage because they claim a separate and independent reason for their rate reduction. Fresno County officials assert that it had filed a separate Rate Change Request on June 24, giving a separate and independent ground for its rate reduction; and Santa Barbara County officials subsequently submitted a similar Rate Change Request on July 21.[1] The State did not rescind its approval of Fresno County's and Santa Barbara County's rate reduction request.

Carroll also told at least one In-Home Support Services (IHSS)

---

[1] The parties acknowledge that Contra Costa County has indicated that, instead of reverting to the pre-July 1 wage rate, it intends to implement its more recent rate request, which seeks to implement wages above the pre-July 1 level. Plaintiffs do not oppose this decision.

2

Public Authority that if State Defendants prevailed in the instant lawsuit and § 12301.6(d)(d) is eventually implemented, counties would be responsible for the state contribution above $9.50 retroactive to July 1, 2009.  Arkush Supp. Decl. ¶ 2.  The Court has made no such ruling.

On July 14, 2009, State Defendants issued a notice to all counties informing them that the State would not begin paying the pre-July 1 rates until July 23.  State Defendants claim that the Department of Social Services could not change the levels of wages and benefits to be paid to IHSS providers in its Case Management, Information and Payrolling System (CMIPS) until July 23.  By that date, the CMIPS system would be reprogrammed.  Even after July 23, State Defendants will not pay the pre-July 1 levels of wages and benefits retroactively to July 1 until the counties submit a supplemental pay warrant.  State Defendants claim, "Under DSS regulations counties are required to process all supplemental payments."[2]  Letter from State Defendants to Judge Wilken Re Complying with Amended Preliminary Injunction.  In order to submit a supplemental pay warrant, according to State Defendants, counties must "complete a 'spec transaction'" that will take "take 20-25 minutes per case."[3]  All-County Welfare Director's Letter at 3.

---

[2] Although State Defendants do not cite any particular regulations for this requirement, it appears that they are referring to Social Services Standard 30-769.252, which provides, "The county shall initiate emergency/supplemental checks" in certain situations, including "[p]ayments for other unusual situations not provided for by the regular payrolling process." Nothing in this standard prohibits the State from initiating a supplemental payment on its own.

[3] According to the State, each county must manually calculate
(continued...)

3

Plaintiffs have now filed another motion for civil contempt sanctions and for a further, more specific preliminary injunction. Defendants oppose the motion. Having considered the papers filed by the parties, the Court further clarifies its injunction and takes Plaintiffs' motion for contempt sanctions under submission.

## DISCUSSION

Under the plain terms of the Court's amended preliminary injunction, State Defendants were ordered to, "by close of business on July 14, 2009, rescind the State's approval of all county rate reduction requests which were submitted after February 20, 2009, to be effective July 1, 2009, and reinstate the State's approval of the pre-July 1 rates." Amd. Prelim. Inj. at 2. The Court was specific in its order because, up until that point, State Defendants' manner of compliance with the original preliminary injunction did not carry out the intent of the order. Thus, when State Defendants refused to rescind their approval of Santa Barbara's rate reduction request submitted during the specified time period, they were in violation of the Court's amended injunction.

The facts related to Fresno County's Rate Change Request are more complicated. On April 30, 2009, Fresno County had submitted a Rate Change Request packet to the CDSS. Included in the packet was form SOC 449, entitled "In-Home Supportive Services Program Public

---

[3](...continued)
the difference between the reduced wage and the reinstated wage, multiply that figure by the number of hours worked at the reduced wage, and enter that amount into the CMIPS. Plaintiffs estimate that this process would take a small county such as San Benito, which only has 420 IHSS consumers, up to ten working days to complete.

4

Authority/Non-Profit Consortium Rate." Also in the packet, Fresno County included the April 28, 2009 Board of Supervisors' Agenda Item, in which the Board stated, "Based on the State maximum participation decrease in wages and benefits and the contingency language in the Memorandum of Understanding, the rate packet will insure that the provider wage decrease from $10.25 to $9.50 and benefit decrease from $.85 to $.60 per hour becomes effective July 1, 2009." The Memorandum of Understanding provides specific contingencies which would permit Fresno to pay lower wages and benefits to IHSS providers.

On June 16, 2009, the Board had approved an agenda item for a $1.00 decrease in wages and benefits based on a purported budget realignment shortfall. The agenda item stated that there would be "no increase in net County cost associated with this action as the recommendation mirrors the recommendation adopted by the Governing Board on April 28, 2009." Leyton Second Supp. Decl., Ex. C (June 16 Agenda Item at 1). The agenda item further stated,

> The $1.00 recommended reduction before you today is specific to the Realignment deficit, and it is recommended that the reduction be divided between wages ($0.75) and benefits ($0.25) to be consistent with the State law change and the Public Authority Rate packet approved by the Governing Board on April 28, 2009. The approval of the recommended action would add a secondary reason to the rate packet submitted to the State, but is not an additional wage/benefits reduction.

Id. at 2.

On June 24, 2009, Fresno County submitted a letter to CDSS stating,

> Enclosed is the approved Board agenda item supporting the Fresno County submission of State Form SOC 449 sent to you on April 30, 2009. Please note that there are no changes that will be made to the submitted SOC 449 form. Independent of the State law changes, on June 16, 2009, the Fresno County Board of Supervisors, sitting as the In-Home Supportive

5

>    Services Public Authority Governing Board (Governing Board), voted to decrease wages and benefits due to loss of realignment funding.

Form SOC 449 is a budget narrative and does not include any information regarding the reasons for seeking approval of a rate change. Thus, a second reason for reducing wages did not affect the budget narrative provided in SOC 449.

As noted above, the Court ordered State Defendants to notify counties that they may submit new Rate Change Requests if they wished to pursue a rate change for reasons other than the passage of § 12306.1(d)(6). The Court noted that if Fresno County had submitted only a single previous Rate Change Request, with a second reason for the request other than the passage of § 12306.1(d)(6), and it wished to pursue a rate reduction, it would have to submit a separate request based on a reason other than § 12306.1(d)(6). The Court concludes that the June 24, 2009 letter merely expresses a second reason for its initial rate change request submitted on April 30, 2009. The letter does not constitute a second rate change request.

Moreover, at the time the Fresno County Board of Supervisors voted to submit the realignment shortfall as a separate reason for the April 30, 2009 Rate Change Request, § 12306.1(d)(6) was good law and scheduled to go into effect on July 1, 2009. Thus, Fresno County either had to reduce its rate or make up the shortfall that the cut in the State's contribution would have created. Many presentations were made to the Board about the fiscal impact of the proposed rate cut, and these presentations presumed that § 12306.1(d)(6) would be implemented on July 1, 2009. The possibility that § 12306.1(d)(6) could be enjoined was not

6

1  discussed at the Board meeting.  Therefore, unless Fresno County
2  submits a new Rate Change Request solely based on a reason other
3  than the passage of § 12306.1(d)(6), it will not be clear whether
4  the Fresno County Board of Supervisors would vote to seek a rate
5  reduction knowing that § 12306.1(d)(6) has been preliminarily
6  enjoined.

7      Thus, to comply with the plain language of the Court's order
8  clarifying the injunction, the State must rescind its prior
9  approval of Santa Barbara and Fresno County's Rate Change Requests.
10 To avoid misunderstandings, these rescissions must be in writing
11 and be sent by overnight delivery within one business day from the
12 date of this order.  At the same time, a copy must be submitted to
13 Plaintiffs' counsel and to the Court, along with a declaration
14 under penalty of perjury verifying that it was sent.  Before the
15 State may approve a rate reduction for Santa Barbara or Fresno
16 County, it must receive from the County a new and separate written
17 request conforming to all the requirements of law and regulation,
18 based on a reason other than § 12306.1(d)(6).  A copy of this
19 request shall be sent to the Court and to Plaintiffs' counsel.  The
20 State may then approve the request in writing, if it accords with
21 law and regulation.

22     The State must correct the underpayments made to providers for
23 the July 1-15 pay period.  The State has cited no regulation
24 preventing it from preparing supplemental pay warrants.  Counties
25 should not be burdened with correcting the mistakes caused by State
26 Defendants' violation of the federal Medicaid statute and failure
27 to implement timely the Court's orders.

28     Therefore, State Defendants must pay IHSS providers, in all

7

counties where the State has rescinded its approval of Rate Change Requests that proposed rate decreases to take effect July 1, 2009, at the correct, pre-July 1 rates in their regular paychecks for the pay period ending July 31, 2009.  State Defendants must also pay all IHSS providers the correct amount owed for the pay period ending July 15, 2009 in a check or checks that issue no later than ten days after the provider submits his or her timesheet for that pay period, or seven business days from the date of this order, whichever is later.  State Defendants shall file a declaration eight business days from the date of this order, verifying that they have done so or showing cause why they have not.  In any county in which the State has approved an increase from the pre-July 1 rate, State Defendants shall pay such increased rate.

Plaintiffs' motion for civil contempt sanctions and attorneys' fees is taken under submission.

IT IS SO ORDERED.

Dated: 7/24/09

                                          CLAUDIA WILKEN
                                          United States District Judge