STEPHEN P. BERZON (SBN 46540)
SCOTT A. KRONLAND (SBN 171693)
STACEY M. LEYTON (SBN 203827)
PEDER J. THOREEN (SBN 217081)
ANNE N. ARKUSH (SBN 254985)
EMILY B. WHITE (SBN 254294)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
sberzon@altshulerberzon.com
skronland@altshulerberzon.com
sleyton@altshulerberzon.com
pthoreen@altshulerberzon.com
aarkush@altshulerberzon.com
ewhite@altshulerberzon.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| SIA CHUE YANG, PATSY MILLER, LYDIA DOMINGUEZ, ALEX BROWN, by and through his mother and next friend Lisa Brown, DONNA BROWN, CHLOE LIPTON, by and through her conservator and next friend Julie Weissman-Steinbaugh, HERBERT M. MEYER, LESLIE GORDON, CHARLENE AYERS, WILLIE BEATRICE SHEPPARD, and ANDY MARTINEZ, on behalf of themselves and a class of those similarly situated; SERVICE EMPLOYEES INTERNATIONAL UNION UNITED HEALTHCARE WORKERS WEST; SERVICE EMPLOYEES INTERNATIONAL UNION UNITED LONG-TERM CARE WORKERS; SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 521; and SERVICE EMPLOYEES INTERNATIONAL UNION CALIFORNIA STATE COUNCIL,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, Governor of the State of California; JOHN A. WAGNER, Director of the California Department of Social Services; DAVID MAXWELL-JOLLY, Director of the California Department of Health Care Services; JOHN CHIANG, California State Controller; FRESNO COUNTY; and FRESNO COUNTY IN-HOME SUPPORTIVE SERVICES PUBLIC AUTHORITY,<br><br>Defendants. | Case No. C 09-02306 CW<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: To Be Set<br>Time: To Be Set<br>Location: To Be Set |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS. . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Factual History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    The Present Discovery Dispute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    The Documents Sought Are Highly Relevant... . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.    State Defendants Have Failed to Demonstrate That Any of the Documents Sought Are Privileged... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.    State Defendants' Remaining Objections Are Meritless.. . . . . . . . . . . . . . . . . . . 11

    D.    Plaintiffs Are Entitled To Their Reasonable Expenses... . . . . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

Plaintiffs' Motion to Compel Production of Documents; Memorandum of Points and Authorities in Support, Case No. C09-02306 CW

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Dominguez v. Schwarzenegger*,
   ___ WL ___, 2010 WL 715396 (9th Cir. Mar. 3, 2010)..................... 5, 6

*Federal Trade Commission v. Warner Communications Inc.*,
   742 F.2d 1156 (9th Cir. 1984)........................................... 11

*Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*,
   572 F.3d 644  (9th Cir. 2009)............................................ 4

*Kaufman v. Board of Trustees*,
   168 F.R.D. 278 (C.D. Cal. 1996) ......................................... 8

*In re McKesson Governmental Entities Average Wholesale Price Litigation*,
   ___ F.R.D. ___, 2009 WL 3706898 (N.D. Cal. Nov. 4, 2009).................. 11

*Olmstead v. L.C. ex rel. Zimring*,
   527 U.S. 581 (1999)................................................... 8, 9

*Orthopaedic Hospital v. Belshe*,
   103 F.3d 1491 (9th Cir. 1997)............................................ 4

*Sanchez v. Johnson*,
   2001 WL 1870308  (N.D. Cal. Nov. 19, 2001).............................. 11

*Trevino v. ACB American, Inc.*,
   232 F.R.D. 612 (N.D. Cal. 2006)......................................... 10

## FEDERAL STATUTES AND RULES

ARRA, Pub.L. No. 111-5, 123 Stat. 115..................................... 3

42 U.S.C. §1396a(a)(30).................................................. 4

42 U.S.C. §1396d......................................................... 3

Fed. R. Civ. P. 26.................................................... 8, 10

Fed. R. Civ. P. 37.................................................... 8, 12

## STATE STATUTES

Cal. Welf. & Inst. Code §12300........................................ 2, 3

Cal. Welf. & Inst. Code §12300.1......................................... 3

Cal. Welf. & Inst. Code §12301.6......................................... 3

Cal. Welf. & Inst. Code §12306........................................... 3

Cal. Welf. & Inst. Code §12306.1.................................... *passim*

ii

Plaintiffs' Motion to Compel Production of Documents; Memorandum of Points and Authorities in Support, Case No. C09-02306 CW

**MISCELLANEOUS**

8B Charles Alan Wright, et al., *Federal Practice & Procedure* §2288.......................... 12

**NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Please take notice that at a date, time, and location to be set by the Court, Plaintiffs will and hereby do move to compel State Defendants to produce certain documents that they have refused to produce in response to a valid discovery request. Specifically, Plaintiffs seek the production of all documents memorializing or relating to communications between State Defendants and officials of the federal government, or internal communications between State Defendants or any of their officers, employees, or agents, discussing, analyzing, reflecting, or otherwise relating to California Welfare and Institutions Code Section 12306.1(d)(6). State Defendants have wrongfully withheld such documents and have also refused to produce logs that would enable Plaintiffs and the Court to assess State Defendants' asserted privileges. Counsel for Plaintiffs and State Defendants have met and conferred in writing and telephonically and been unable to resolve this issue.

This Motion is made pursuant to Rule 37 of the Federal Rules of Civil Procedure. This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declaration of Peder J. Thoreen in support thereof, any oral argument that may be heard, the complete files and record of this action, and such other and further matters as the Court may properly consider.

Dated: April 2, 2010                         Respectfully submitted,

                                             STEPHEN P. BERZON
                                             SCOTT A. KRONLAND
                                             STACEY M. LEYTON
                                             PEDER J. THOREEN
                                             ANNE N. ARKUSH
                                             EMILY B. WHITE

                                             By:   /s/ Peder J. Thoreen
                                                    Peder J. Thoreen
                                                    Attorneys for Plaintiffs

1

Plaintiffs' Motion to Compel Production of Documents; Memorandum of Points and Authorities in Support, Case No. C09-02306 CW

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs, In-Home Supportive Services ("IHSS") consumers and unions representing IHSS providers, brought this suit to challenge the reduction of rates paid to IHSS providers on the ground that the reduction violates federal law. By the present motion, Plaintiffs seek the production of critical documents that Defendants Arnold Schwarzenegger, John A. Wagner, David Maxwell-Jolly, and John Chiang ("State Defendants"), have wrongfully refused to produce in discovery. These documents sought reflect internal State communications, and communications between the State and the federal government, related to the state statute which enacted the cuts at issue in this case, California Welfare and Institutions Code §12306.1(d)(6) ("Section 12306.1(d)(6)"), including communications related to the federal American Recovery and Reinvestment Act ("ARRA").

On March 3, 2010, the Ninth Circuit affirmed the preliminary injunction in this case that enjoined the implementation of Section 12306.1(d)(6). In that opinion, the Ninth Circuit relied expressly upon the very type of documents sought by Plaintiffs by this motion. And yet State Defendants have continued to withhold these documents, inexplicably claiming that they are "not relevant to any issue in this lawsuit." As indicated by the Ninth Circuit's decision and detailed below, the importance of these documents could not be clearer, and State Defendants' objections – primarily based on the documents' alleged irrelevance – fail. Because State Defendants' position is without substantial justification, Plaintiffs also seek reimbursement of expenses, including reasonable attorneys' fees, incurred in bringing this motion.

## BACKGROUND

**A.  Factual History**

California established the IHSS program to provide assistance with the tasks of daily living to low-income elderly and/or disabled persons "who cannot safely remain in their homes or abodes of their own choosing unless these services are provided." Cal. Welf. & Inst. Code §12300(a). The types of services provided through the program include assistance with bathing, dressing, cooking, feeding, bowel and bladder care, self-administration of medication, and cleaning. *Id.* §§12300(b), (c). The program also authorizes, under some circumstances, protective supervision for mentally impaired

2

Plaintiffs' Motion to Compel Production of Documents; Memorandum of Points and Authorities in Support, Case No. C09-02306 CW

individuals and educational and paramedical services such as the administration of medication and injections. *Id.* §§12300(b), 12300.1.

Because the vast majority of IHSS consumers receive services as part of California's Medicaid program ("Medi-Cal"), the federal government pays a certain percentage of these costs, known as the Federal Medical Assistance Percentage or "FMAP." *See* 42 U.S.C. §1396d(b). That amount is generally 50% of providers' wages and benefits, but in 2009, Congress passed the ARRA (commonly known as the Stimulus Act), which increased the federal share to approximately 62%. ARRA, Pub. L. No. 111-5, §5001(b)-(c), 123 Stat. 115. Of the remaining cost, often referred to as the "non-federal share," counties pay 35 percent and the state pays 65 percent of wages up to the current statutory cap of $12.10 per hour, above which the State will not share the costs. Cal. Welf. & Inst. Code §§12306, 12306.1(c)-(d).

The IHSS program is administered by counties, which may establish public authorities to provide for the delivery of IHSS services. Cal. Welf. & Inst. Code §12301.6(a). These public authorities are considered employers of IHSS providers for some purposes, including bargaining about providers' wages and benefits. *Id.* §12301.6(c)(1). As a result, the rates paid to IHSS providers vary by county.

In early 2009, the California Legislature held the Third Extraordinary Legislative Session to adopt emergency budget measures. As part of this session, the Legislature enacted Senate Bill No. 6 ("SBX3 6"), §9, which amended Cal. Welf. & Inst. Code §12306.1(d) to add the following provision (Section 12306.1(d)(6)):

> (6) Notwithstanding [other provisions of Section 12306.1], the state shall participate as provided in subdivision (c) in a total cost of wages up to nine dollars and fifty cents ($9.50) per hour and in individual health benefits up to sixty cents ($0.60) per hour.

Section 12306.1(d)(6) thus reduces the maximum IHSS provider rate in which the State will participate from $12.10 per hour to $10.10 per hour ($9.50 in wages; $0.60 in benefits). The provision was to become effective July 1, 2009.

**B.    Procedural History**

On June 4, 2009, Plaintiffs filed this action, alleging that the proposed reduction in providers' wages would violate the federal Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act. Plaintiffs' Medicaid Act claims are based on a provision of that Act which requires that the State ensure that payments for care "are consistent with . . . quality of care and are sufficient to

3

Plaintiffs' Motion to Compel Production of Documents; Memorandum of Points and Authorities in Support, Case No. C09-02306 CW

enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." 42 U.S.C. §1396a(a)(30)(A) ("Section 30(A)"). Plaintiffs allege that Section 12306.1(d)(6) will reduce payments to IHSS providers in a manner inconsistent with this mandate, and that, as interpreted by the Ninth Circuit in cases such as *Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644 (9th Cir. 2009), and *Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491 (9th Cir. 1997), Section 30(A) required State Defendants to analyze the impact of Section 12306.1(d)(6) on the factors set forth in Section 30(A) prior to the enactment of the statute.

One of State Defendants' primary defenses to this claim is their contention that Section 12306.1(d)(6) does not set payment rates at all. Instead, they have argued, Section 12306.1(d)(6) merely lowers the *cap* on wages and benefits to which the State will contribute, but that those wages and benefits are set by the counties, not the State.[1] Plaintiffs have responded that Section 12306.1(d)(6) undoubtedly influences the wages set by counties, effectively lowering those wages. Plaintiffs have further relied upon the fact that the State, which is charged with complying with the Medicaid Act, reviews and gives final approval to all provider wage rates proposed by counties.

In this regard, Plaintiffs have relied on the fact that the passage of Section 12306.1(d)(6) invalidated the then-current rates for all counties paying over $9.50 per hour and the State required those counties to submit new rate requests in response to the new statute. The invalidation of current rates above $9.50 was done specifically to comply with the ARRA.[2] To support this argument, Plaintiffs have

---

[1] State Defendants have made this argument numerous times, including: Dkt. #95 at 3:19 - 4:3, 12:4-5 ("The State has no influence in determining what the wages and benefits will be in each county."), 12:16-17 ("The state does not determine what the wages and benefits will be."), 12:21-23 ("the wages and benefits paid to IHSS workers are established through the collective bargaining process in which the state has no involvement"); Dkt. #163 at 2:5-6 ("As State defendants have repeatedly explained, *the State does not set the wages and benefits for IHSS providers*, the counties do."); 9th Cir. Dkt. #31 ("§ 12306.1(d)(6) does not set any reimbursement rates"), 10 ("the statute [§12306.1(d)(6)] does not require counties to reduce wages and benefits paid to IHSS providers"); 18 ("§ 12306.1(d)(6) does not set any reimbursement rates").

[2] A condition of receiving billions of dollars in Medicaid funds through the ARRA was that the State not require counties to increase their percentage of the non-federal share of existing rates. *See* ARRA §5001(g)(2). If Section 12306.1(d)(6) had not had the effect of rescinding approval of rates above $9.50, it would have violated this requirement by forcing certain counties to maintain their prior rates and bear a greater percentage of providers' wages.

4

Plaintiffs' Motion to Compel Production of Documents; Memorandum of Points and Authorities in Support, Case No. C09-02306 CW

cited certain communications between the State Defendants and the federal government regarding the interaction of the ARRA and Section 12306.1(d)(6).  *See* Dkt. #19 ¶¶2-6 & Exhs. A-E.[3]  In those communications, the State admitted that Section 12306.1(d)(6) had the effect of invalidating the present wage rates: "[T]he State's conditional approvals of the [public authority ("PA")] rates are no longer effective and each of the counties in question will need to request the State's approval of another PA rate."  Dkt. #19, Exh. A at 5.

On June 26, 2009, the Court granted Plaintiffs' motion for a preliminary injunction and enjoined the implementation of §12306.1(b)(6), concluding that Plaintiffs had demonstrated a likelihood of success on their claim that Section 12306.1(d)(6) violates Section 30(A).  Dkt. #130, 131.  State Defendants appealed the preliminary injunction, and it was affirmed by the Ninth Circuit on March 3, 2010.  *Dominguez v. Schwarzenegger*, ___ WL ___, 2010 WL 715396 (9th Cir. Mar. 3, 2010).

Both this Court and the Ninth Circuit rejected State Defendants' contention that Section 12306.1(d)(6) does not effectively set rates.  Dkt. #131 at 10; 2010 WL 715396, at *4-*5.  In its published opinion affirming the preliminary injunction, the Ninth Circuit expressly relied on communications between the State and the federal government relating to the interaction between the ARRA and Section 12306.1(d)(6):

> [T]he [California Department of Health Care Services] has recognized the direct link between the State's change in contribution rate and the resulting change in reimbursement rates. In April 2009, the Department sent the United States Department of Health and Human Services (HHS) an analysis of § 12306.1(d)(6), providing its arguments as to why § 12306.1(d)(6) did not violate newly enacted requirements of ARRA. That analysis explained the reduction in the State's contribution under § 12306.1(d)(6), including that "funding has been reduced so that the maximum wage participation level will be $10.10 per hour starting July 1, 2009. As a result, the State's conditional approvals of the PA rates are no longer effective and each of the counties in question will need to request the State's approval of another PA rate. . . . If in connection with that a county then chooses to negotiate different wages in excess of the $10.10 maximum wage participation level, it will be doing so voluntarily and not because of any State requirements." Thus, the State explicitly invalidated its prior approval of PA rates, previously negotiated via collective bargaining, as a result of § 12306.1(d)(6).

---

[3] The Union Plaintiffs or their affiliates were involved in some of these discussions, which is how they obtained the limited communications they presented to the Court.  Plaintiffs do not seek the production of documents that they possess and have already filed with the Court.  But there are obviously many communications as to which the Union Plaintiffs were not a party.  Otherwise, State Defendants would have nothing to withhold.

5

2010 WL 715396, at *5.[4] Elsewhere, the Ninth Circuit also cited a May 1, 2009, "All-County Information Notice" issued by the Department of Social Services, which instructed that, in light of Section 12306.1(d)(6), "Counties currently providing wages and individual health benefits above $10.10 must submit a PA Rate Change Request to reflect the change in the maximum amount in which the state will participate."  2010 WL 715396, at *2, n.3.

**C.     The Present Discovery Dispute**

On December 22, 2009, Plaintiffs served State Defendants with their first set of requests for production of documents.  Thoreen Decl., Exh. A.  State Defendants responded to those requests on February 26, 2010.  *Id.*, Exh. B.  The present motion relates to only one of the requests.  That request, and State Defendants' response, are as follows:

> **REQUEST NO. 3:**
>
> All documents memorializing or relating to communications between State Defendants and officials of the federal government, or internal communications between State Defendants or any of their officers, employees, or agents, discussing, analyzing, reflecting, or otherwise relating to §12306.1(d)(6).
>
> **RESPONSE TO REQUEST 3:**
>
> State defendants object to this request on the grounds that it is overbroad, vague, ambiguous, burdensome and compound.  The request also seeks documents that are confidential and subject to the attorney/client privilege, attorney work-product doctrine, and deliberative process privilege.  Moreover, this request is not calculated to lead to the discovery of admissible evidence and requests documents that are not relevant to any issue in this lawsuit.  Therefore, State defendants will not produce any documents in response to this request.

*Id.* at 5.

On March 9, 2010, Plaintiffs sent State Defendants a letter outlining a number of deficiencies in State Defendants' objections to Request No. 3, including pointing out that, in affirming the preliminary

---

[4] The Ninth Circuit also cited the following exchange between the State and the federal government regarding the ARRA and Section 12306.1(d)(6):

> Notably, in concluding that § 12306.1(d)(6) did not render the State ineligible for increased funding under ARRA, HHS advised the State that if the Department were to approve provider wage rates at a level less than that recommended by the county, "the State would need to assure that the lack of funding from local sources will not result in lowering the amount, duration, scope or quality of care and services available under the plan."

2010 WL 715396, at *6.

6

Plaintiffs' Motion to Compel Production of Documents; Memorandum of Points and Authorities in Support, Case No. C09-02306 CW

injunction in this case, the Ninth Circuit specifically relied on documents responsive to this request related to the ARRA. Thoreen Decl., Exh. C at 3. On March 19, State Defendants responded as follows:

> State defendants stand by their objections to this overly broad request. However, to the extent that plaintiffs have narrowed the request to "communications [that] discuss the impact of section 12306.1(d)(6) on access and quality of IHSS services" that may be "relevant to plaintiffs' substantive Medicaid claim and *Olmstead* claims," State defendants do not have any such documents.[] To the extent that this request also seeks documents related to communications regarding the impact of the American Recovery and Reinvestment Act (ARRA), such communications are not only privileged, but also not relevant to any issue in this lawsuit. State defendants will not undertake the unduly burdensome task of searching for documents that may be related to ARRA and section 12306.1(d)(6). Moreover, to the extent that these communications also included your client, SEIU, plaintiffs have equal access to the documents. Indeed, plaintiffs submitted many of these documents to the district court in support of their motion for preliminary injunction. Finally, your citation to the Ninth Circuit's decision regarding the appeal of the preliminary injunction, does not support your position here. The Ninth Circuit's only reference to ARRA concerns the increased percentage of federal funding available under the Act. For all these reasons, plaintiffs [*sic*] will not produce any documents in response to this request.

Thoreen Decl., Exh. D at 1-2.

In a separate portion of that letter addressing State Defendants' assertion of privileges, they stated: "we have determined that the attorney/client privilege would only apply to documents that would be responsive to Request No. 3 and the communications between the State and federal government officials regarding whether the State would lose ARRA funding as a result of the enactment of section 12306.1(d)(6)." *Id.* at 2. But State Defendants refused to produce a privilege log as to those documents, on the ground that they are allegedly "totally unrelated to any issue in this lawsuit." *Id.* Defendants further noted that their asserted "deliberative process privilege" only potentially applies "to Request No. 3 and those communications related to ARRA as described above." *Id.* at 3. Again, State Defendants refused to produce a privilege log or otherwise comply with the requirements for asserting the deliberative process privilege. *Id.*

Plaintiffs and State Defendants held a telephonic meet and confer on March 24, 2010, during which Plaintiffs' counsel stated that the present motion would be necessary if State Defendants continued to refuse to at least produce responsive documents related to Section 12306.1(d)(6) and the ARRA. Thoreen Decl. ¶6. The parties have been unable to resolve their differences through this meet and confer process. *Id.*

7

Plaintiffs' Motion to Compel Production of Documents; Memorandum of Points and Authorities in Support, Case No. C09-02306 CW

**ARGUMENT**

By this motion, Plaintiffs seek an order compelling State Defendants to produce documents responsive to Request No. 3. Plaintiffs are entitled to these documents because they are relevant to Plaintiffs' claims, or – at the very least – "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see Kaufman v. Board of Trustees*, 168 F.R.D. 278, 280 (C.D. Cal. 1996) ("Rule 26(b) is liberally interpreted to permit wide-ranging discovery . . . .  The burden of proof is on the party opposing discovery to claim lack of relevancy and privilege."). Plaintiffs are also entitled to their expenses incurred in bringing this motion, including the reasonable attorneys' fees, because State Defendants' refusal to produce the documents in question was not "substantially justified." *See* Fed. R. Civ. P. 37(a)(5).

**A.   The Documents Sought Are Highly Relevant.**

State Defendants' internal communications, and communications with the federal government, regarding Section 12306.1(d)(6) – the entire reason this case was brought – are highly relevant to this litigation, and Request No. 3 is at least reasonably calculated to lead to the discovery of admissible evidence.

The documents sought are particularly relevant to whether Section 12306.1(d)(6) would have the effect of reducing rates paid to IHSS providers. As described above, the Ninth Circuit relied heavily on documents that would be responsive to this request, namely, communications between the State and the federal government regarding the interaction of Section 12306.1(d)(6) and the ARRA, in concluding that Section 12306.1(d)(6) would reduce rates. State Defendants' bald assertion that responsive documents related to Section 12306.1(d)(6) and the ARRA are "not relevant to any issue in this lawsuit" flies in the face of the Ninth Circuit's reasoning.[5]

---

[5] In addition, as noted above, the ARRA significantly increased the percentage of IHSS providers' wages paid by the federal government. This fact is relevant to Plaintiffs' claims under the Americans with Disabilities Act and the Rehabilitation Act. Those acts, as interpreted by the Supreme Court in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), prohibit the "[u]njustified isolation" of disabled persons. *Id.* at 597. Plaintiffs have alleged that the reduction in wages caused by Section 12306.1(d)(6) will result in a shortage of IHSS providers which, in turn, will force many IHSS recipients into institutions in violation of *Olmstead*. However, the Supreme Court held in *Olmstead* that

> The State's responsibility, once it provides community-based treatment to qualified

8

Plaintiffs' Motion to Compel Production of Documents; Memorandum of Points and Authorities in Support, Case No. C09-02306 CW

Similarly, the May 1 All-County Information Notice cited by the Ninth Circuit demonstrates that Section 12306.1(d)(6) invalidated existing rates, further disproving State Defendants' assertion that counties bear the sole responsibility for provider rates. The existence of this notice suggests that the State Defendants had internal communications regarding the impact of Section 12306.1(d)(6) on rates. Those communications would be responsive to Request No. 3 and, like the notice itself, are relevant to State Defendants' contention that Section 12306.1(d)(6) did not affect rates.

For all of these reasons, State Defendants' internal communications and communications with the federal government regarding Section 12306.1(d)(6) are highly relevant to this litigation, and Plaintiffs are therefore entitled to the documents sought.

**B.  State Defendants Have Failed to Demonstrate That Any of the Documents Sought Are Privileged.**

State Defendants have asserted attorney/client, attorney work product, and deliberative process privileges with respect to the documents at issue.[6] But they have refused to produce privilege logs on the (false) ground that the documents are not relevant and that creating a log would therefore impose an undue burden. *See* Thoreen Decl., Exh. D at 2-3.

---

persons with disabilities, is not boundless. The reasonable-modifications regulation speaks of "reasonable modifications" to avoid discrimination, and allows States to resist modifications that entail a "fundamenta[l] alter[ation]" of the States' services and programs.

527 U.S. at 603. This "fundamental alteration" defense allows a state to avoid liability if "in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with . . . disabilities." *Id.* at 604. Although not determinative, the amount of financial resources available to the State is relevant to this affirmative defense. State Defendants' communications related to the ARRA and Section 12306.1(d)(6) are at least reasonably calculated to lead the discovery of admissible evidence regarding the impact of the ARRA (and its increased FMAP) on the resources available to the State to fund the IHSS program and competing programs. Although State Defendants stated in their March 19 letter that they have no responsive document related to Plaintiffs' *Olmstead* claims, it is unclear whether this was intended to include responsive documents demonstrating the ARRA's impact on a fundamental alteration defense.

[6] State Defendants further object on the ground that the responsive documents are "confidential," but, without more, that is not a valid objection. In any event, the Court has entered a protective order, which should address any confidentiality concerns.

9

As described above, the documents at issue are relevant to this litigation.  To the extent that any such documents are allegedly privileged, State Defendants must produce a log with sufficient specificity "to enable [Plaintiffs] to assess the claim" of privilege.  Fed. R. Civ. P. 26(b)(5)(A)(ii).  State Defendants are wrong in contending, in their March 19 letter, that their general descriptions of the types of documents that are allegedly privileged "more than compl[y] with Rule 26."  *See Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 618 (N.D. Cal. 2006) (party withholding allegedly privileged documents "*must produce a privilege log detailing all such documents*" (emphasis in original)); *see also* Fed. R. Civ. P. 26, 1993 adv. comm. notes.  State Defendants' description of the allegedly-privilege documents is as follows:

> [T]he communications plaintiffs seek were between and among attorneys representing various State departments, including defendants Department of Health Care Services and the Department of Social Services, concerning SEIU's position regarding the availability of ARRA funding and the enactment of section12306.1(d)(6).  These communications also concern the State's attorneys' impressions and analysis of SEIU's communications with federal officials.

Thoreen Decl., Exh. D at 3.  State Defendants also describe as privileged "communications between the State and federal governments regarding whether the State would lose ARRA funding."  *Id.* at 2.  These general descriptions do not provide sufficient specificity to permit Plaintiffs to assess the asserted privilege.

For example, Plaintiffs have a right to know the names of the individuals sending and receiving the communications to determine whether they privilege has been waived.  State Defendant's own letter indicates that the privilege is likely waived as to at least some of the allegedly privileged communications.  As noted, they include within the description of privileged documents "communications between the State and federal government officials regarding whether the State would lose ARRA funding."  But those documents, admittedly shared with non-clients (*i.e.*, federal government officials), are no longer protected by any privilege.

Further, as Plaintiffs advised State Defendants in their March 9 letter, State Defendants have entirely failed to comply with the requirements for asserting the deliberative process privilege.  That privilege applies only to documents that are both "predecisional" and "deliberative"; it generally does not apply to purely factual material; and it yields where a litigant's need for the deliberative materials or

10

the need for accurate fact-finding outweigh the government's interest in non-disclosure. *Federal Trade Comm'n v. Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984); *In re McKesson Governmental Entities Average Wholesale Price Litig.*, ___ F.R.D. ___, 2009 WL 3706898, at *5-*6 (N.D. Cal. Nov. 4, 2009); *Sanchez v. Johnson*, 2001 WL 1870308, at *4-*6 (N.D. Cal. Nov. 19, 2001). "The burden of articulating the basis for the assertion of the deliberative process privilege is with the party asserting the privilege." *In re McKesson*, 2009 WL 3706898, at *7. And "the privilege must be strictly confined within the narrowest possible limits consistent with the logic of its principles." *Sanchez*, 2001 WL 1870308, at *6 (quotation marks and citation).

In accordance with these principles, in order to invoke the privilege State Defendants must provide a declaration from the head of each relevant agency (or someone of similar status) who must have personally reviewed the documents for which the privilege is asserted and who must declare, with respect to each such document:

> 1) specific facts demonstrating why each document is "deliberative" and "predecisional";
> 2) specific facts concerning: a) the degree and type of harm that would result from requiring production of each document; and b) what type of protective order would be necessary to reduce that harm or, alternatively, why a protective order would not reduce this harm; and 3) what portions of each document are deliberative and, if specific sections are purely factual, why those sections cannot be produced.

*In re McKesson*, 2009 WL 3706898, at *6-*7. State Defendants cannot avoid this obligation based on their erroneous claim that the documents in question are not relevant.

**C.   State Defendants' Remaining Objections Are Meritless.**

State Defendants' remaining, boilerplate objections are meritless. The request is not vague, ambiguous, or compound. It simply seeks State Defendants' internal communications and communications with the federal government regarding Section 12306.1(d)(6). Because all responsive documents must relate to this specific statute, they should be easily identifiable. Nor is the request overbroad. For the reasons described above, any or all of the communications sought may be directly relevant to Plaintiffs claims and, at the very least, are reasonably calculated to lead to the discovery of admissible evidence.

Finally, the request is not unduly burdensome. Section 12306.1(d)(6) was enacted in early 2009. Therefore, the time frame at issue is reasonably limited. Further, State Defendants have presented no

11

Plaintiffs' Motion to Compel Production of Documents; Memorandum of Points and Authorities in Support, Case No. C09-02306 CW

basis upon which to believe that the amount of responsive material is extraordinarily voluminous. Given the limited nature of the subject matter, it is highly unlikely that retrieving responsive documents will be unduly burdensome.

**D.      Plaintiffs Are Entitled To Their Reasonable Expenses.**

When a motion to compel discovery is granted, the Court "must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." Fed. R. Civ. P. 37(a)(5)(A); *see* Fed. R. Civ. P. 37, 1970 adv. comm. notes ("expenses should ordinarily be awarded").

Neither of the only potentially applicable exceptions to an award of expenses – either that the opposing parties' nondisclosure was "substantially justified" or that other circumstances exists that would "make an award of expenses unjust" (Fed. R. Civ. P. 37(a)(5)(A)(ii) & (iii)) – apply here. It can hardly be said that State Defendants were substantially justified in asserting that the responsive documents are "not relevant to any issue in this lawsuit" when the Ninth Circuit relied on precisely the same type of documents when affirming the preliminary injunction. Nor are there any circumstances that would make an award of expenses unjust. To the contrary, an award of expenses will further the purpose of Fed. R. Civ. P. 37(a)(5)(A) by deterring abuses in the discovery process requiring Court involvement. *See* Fed. R. Civ. P. 37, 1970 adv. comm. notes; 8B Charles Alan Wright, et al., *Federal Practice & Procedure* §2288 (3d ed. 2010).

Plaintiffs' expenses through March 31, 2010, totaling $5,827.00, are detailed and supported in the accompanying declaration of Peder Thoreen at ¶¶7-11 & Exh. E. Plaintiffs will supplement their expenses upon the filing of their reply brief.

///

///

12

Plaintiffs' Motion to Compel Production of Documents; Memorandum of Points and Authorities in Support, Case No. C09-02306 CW

# CONCLUSION

For all of these reasons, the Court should grant Plaintiffs' motion to compel and award Plaintiffs their reasonable expenses incurred in bringing this motion.

Dated: April 2, 2010                Respectfully submitted,

                                    STEPHEN P. BERZON
                                  SCOTT A. KRONLAND
                                  STACEY M. LEYTON
                                  PEDER J. THOREEN
                                  ANNE N. ARKUSH
                                  EMILY B. WHITE

By:   */s/ Peder J. Thoreen*
           Peder J. Thoreen
           Attorneys for Plaintiffs

13

Plaintiffs' Motion to Compel Production of Documents; Memorandum of Points and Authorities in Support, Case No. C09-02306 CW