1

2

3

4

5

6                           IN THE UNITED STATES DISTRICT COURT

7                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   LYDIA DOMINGUEZ, et al.,                    No. C 09-02306 CW

10              Plaintiffs,                      ORDER GRANTING
                                                PLAINTIFFS' MOTION
11        v.                                     FOR CLASS
                                                CERTIFICATION
12  ARNOLD SCHWARZENEGGER, et al.,

13              Defendants.
   _____/

14

15        This case is about the implementation of cuts to the wages

16  paid to In-Home Support Services (IHSS) providers, who provide in-

17  home assistance to low-income elderly and disabled individuals

18  through California's Medi-Cal program.  Plaintiffs are a proposed

19  class of tens of thousands of individuals who currently receive

20  assistance through IHSS and the unions who represent IHSS

21  providers.  Plaintiffs seek declaratory and injunctive relief to

22  enforce (1) the procedural and substantive requirements of the

23  Medicaid Act, 42 U.S.C. § 1396a(a)(30)(A) and (2) and the anti-

24  discrimination provisions of the Americans with Disabilities Act of

25  1990, 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act

26  of 1973, 29 U.S.C. § 794(a).  In this motion, Plaintiffs seek

27  certification under Federal Rule of Civil Procedure 23(b)(2) of a

28

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1    class composed of IHSS consumers residing in twenty-one counties[1]

2    and a subclass composed of IHSS consumers residing in Fresno

3    county.  State Defendants and Fresno Defendants filed separate

4    oppositions to the motion.  Having considered all of the papers

5    filed by the parties, the Court grants Plaintiffs' motion.[2]

6                            BACKGROUND

7        In 1973, California established the IHSS program to provide

8    assistance with the tasks of daily living to low-income elderly and

9    disabled persons "who cannot safely remain in their homes or abodes

10   of their own choosing unless these services are provided."  Cal.

11   Welf. & Inst. Code § 12300(a).  IHSS providers give services such

12   as assistance with bathing, dressing, cooking, feeding, bowel and

13   bladder care, self-administration of medication and cleaning.  Id.

14   § 12300(b), (c).  Over 360,000 IHSS providers serve over 440,000

15   individuals in California.  More than sixty-two percent of IHSS

16   recipients are served by a relative.

17        IHSS is administered by the State's counties.  Fifty-six of

18   California's fifty-eight counties have established either a public

19   authority (PA) or a non-profit consortium (NPC) to deliver IHSS

20

21        [1]The twenty-one counties are Alameda, Calaveras, Contra Costa,
Fresno, Marin, Mendocino, Monterey, Napa, Placer, Riverside,
22   Sacramento, San Benito, San Francisco, San Luis Obispo, San Mateo,
Santa Barbara, Santa Clara, Santa Cruz, Solano, Sonoma and Yolo.
23

24        [2]The Court takes judicial notice of Plaintiffs' exhibit A to
their request, a copy of a June 24, 2009 agenda item before the
25   Santa Clara County Board of Supervisors, because it contains facts
that are not subject to reasonable dispute in that they are capable
26   of accurate and ready determination by resort to sources whose
accuracy cannot be reasonably questioned.  The Court takes judicial
27   notice of Defendants' exhibit A to their notice, the declaration of
Sanja Kavocevic submitted in support of Fresno's opposition to the
28   motion for a preliminary injunction, but not for the truth of the
matters asserted therein.

United States District Court
For the Northern District of California

services.  Each of these fifty-six counties has created and maintains a registry from which service providers can be drawn.  As of June 30, 2007, there were over 14,500 persons in county registries.[3]  These PAs and NPCs are considered employers of IHSS providers for some purposes, including collective bargaining agreements pertaining to providers' wages and benefits; however, individual consumers hire, fire and supervise their own IHSS providers.  Id. § 12301.6(c)(1).

Each county establishes the providers' wages and benefits.  Thus, the rates paid to IHSS providers vary by county.  Because most IHSS consumers participate in California's Medicaid program, the federal government pays for about sixty-two percent of the IHSS program's costs.[4]  See 42 U.S.C. § 1396d(b).  The State pays sixty-five percent and the county pays thirty-five percent of the remaining thirty-eight percent of the program's costs.  Cal. Welf. & Inst. Code § 12306.  The State's contribution, however, is subject to a statutory cap.  Currently, the maximum state contribution is sixty-five percent of the non-federal share of a wage and benefit package of $12.10 per hour.  Id. at § 12306.1(c)-(d).

Wages and benefits are determined through the collective bargaining process at the county level.  Once these wages and benefits are decided, they must be submitted to the California

---

[3]The parties did not provide a more recent estimate for the number of IHSS providers in county registries.

[4]Before the passage of the American Recovery and Reinvestment Act of 2009, the federal government contributed fifty percent of the program's costs.  Dominguez v. Schwarzenegger, 595 F.3d 1087, 1091 n.2 (9th Cir. 2010).

Department of Health Care Services to ensure that they comply with all applicable state and federal laws.  Id. § 12306.1(a)-(b).

In response to California's unprecedented budget crisis, on February 20, 2009, the Governor signed into law California Welfare and Institutions Code § 12306.1(d)(6).  Scheduled to take effect July 1, 2009, the law would have reduced the State's maximum contribution in wages and benefits from sixty-five percent of the non-federal share of an hourly rate of $12.10 to sixty-five percent of the non-federal share of an hourly rate of $10.10.  This rate represents $9.50 for wages and $0.60 for benefits.  Counties would not have to reduce wages and benefits and would be permitted to make up the difference between the State's previous contribution and any reduction that would result from the State's new maximum contribution.

Only counties that currently pay IHSS providers more than $10.10 per hour in wages and benefits would see a reduction in the State's contribution to IHSS costs.  At the time the complaint was filed, thirty-six of the fifty-six PAs and NPCs paid IHSS providers $10.10 per hour or less in wages and benefits.  Thus, there would be no reduction in the State's contribution to IHSS costs in a majority of the counties, including Los Angeles, where forty-two percent of all IHSS services are provided.  Of the twenty-one counties that pay wages and benefits of more than $10.10 per hour to IHSS providers, twelve notified the State of their intent to reduce IHSS wages in proportion to the anticipated reduction in the State's contribution.  Of those twelve counties, Fresno is the only one named as a Defendant.  The Fresno PA submitted a rate change request that hourly wages be reduced from $10.25 to $9.50 and

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

benefits from $.85 to $.60.  These reduced rates were to take effect July 1, 2009.

In their complaint, Plaintiffs allege that the wage reduction provided in § 12306.1(d)(6) would have a substantial financial impact on tens of thousands of IHSS providers throughout the State. Plaintiffs' expert, Economics Professor Candace Howes, estimates that approximately 4,000 providers will leave IHSS employment because of the rate reduction and that 2,700 IHSS consumers will be unable to find replacements.  Howes estimates that over one-fifth of these consumers will try to remain at home without assistance from an IHSS provider, which could be dangerous for the consumer. Roughly half of those unable to find replacements (approximately 1,400) may have to enter skilled-nursing facilities or other residential institutions.[5]

On June 4, 2009, Plaintiffs filed this class action complaint and moved for entry of a preliminary injunction prohibiting State Defendants from implementing section 12306.1(d)(6) pending a final decision on the merits.  On June 26, 2009, the Court granted

_____

[5]Each side has challenged the admissibility of the evidence submitted by the other side.  However, unlike evidence presented at a summary judgment stage, evidence presented in support of class certification need not be admissible at trial.  See Mazza v. Am. Honda Motor Co., 254 F.R.D. 610, 616 (C.D. Cal. 2008) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 187 (1974)).  At the class certification stage, a plaintiff need not present evidence because discovery may not yet have occurred.  In fact, "the district court is bound to take the substantive allegations of the complaint as true."  In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig. v. Standard Oil Co. of Cal., 691 F.2d 1335, 1342 (9th Cir. 1982) (citation omitted).  The district court may, of course, consider evidence that supports or does not support class certification, but a district court may certify a class without supporting evidence.  Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992).  Therefore, the Court will exercise its discretion to consider the proffered evidence as appropriate.

United States District Court
For the Northern District of California

Plaintiffs' motion and found that they had demonstrated a strong likelihood of success on their first cause of action, that State Defendants had violated the federal Medicaid Act by failing to consider the factors set forth in 42 U.S.C. § 1396a(a)(30)(A) (Section 30(A)) before enacting section 12306.1(d)(6).  The Court also concluded that, absent immediate injunctive relief, both IHSS consumers and providers would suffer irreparable harm as a result of the wage reductions caused by the implementation of section 12306.1(d)(6).

Plaintiffs bring three other causes of action, none of which the Court addressed in the preliminary injunction opinion: the second cause of action against State Defendants for violating the substantive provisions of Section 30(A), the third cause of action against State and Fresno Defendants for violating the anti-discrimination provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132, and the fourth cause of action against State and Fresno Defendants for violating the anti-discrimination provisions of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

Plaintiffs now move to certify the following class pertaining to all causes of action:

> All In-Home Supportive Services consumers residing in Alameda, Calaveras, Contra Costa, Fresno, Marin, Mendocino, Monterey, Napa, Placer, Riverside, Sacramento, San Benito, San Francisco, San Luis Obispo, San Mateo, Santa Barbara, Santa Clara, Santa Cruz, Solano, Sonoma and Yolo counties.

Motion at 1.  Plaintiffs move to certify the following subclass (Fresno Subclass) pertaining to the third and fourth causes of action: "All In-Home Supportive Services consumers residing in Fresno County."  Id.

6

United States District Court
For the Northern District of California

LEGAL STANDARD

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Plaintiffs move for certification under Rule 23(b)(2), which allows certification if

the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole

Fed. R. Civ. P. 23(b)(2).

Plaintiffs seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiffs have borne their burden. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). The court must conduct a "rigorous analysis," which may entail "looking beyond the pleadings to issues overlapping with the merits of the underlying claims." Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 594 (9th Cir. 2010). In doing so, however, the court must not consider "any portion of the

1  merits of a claim that do not overlap with the Rule 23

2  requirements." <u>Id.</u>  To satisfy itself that class certification is

3  proper, the court may consider material beyond the pleadings and

4  require supplemental evidentiary submissions by the parties.  <u>Id.</u>

5  at 589 (quoting <u>Blackie v. Barrack</u>, 524 F.2d 891, 901 n.17 (9th

6  Cir. 1975)).  Ultimately, it is in the district court's discretion

7  whether a class should be certified.  <u>Id.</u> at 579.

8                            DISCUSSION

9       In addition to opposing class certification, Fresno Defendants

10  also argue that Plaintiffs lack standing to assert their claims.

11  The Court addresses the standing issues first.

12  I.   Standing

13       The standing inquiry asks whether a plaintiff has suffered an

14  actual or imminent injury that is fairly traceable to the

15  defendant's conduct and that is likely to be redressed by a

16  favorable court decision.  <u>Salmon Spawning & Recovery Alliance v.</u>

17  <u>Gutierrez</u>, 545 F.3d 1220, 1225 (9th Cir. 2008).  Fresno Defendants

18  argue that Plaintiffs' declarations submitted in support of their

19  motion for class certification demonstrate that they do not have

20  standing.  Fresno Defendants assert that these declarations merely

21  describe named Plaintiffs "fears, beliefs, and suppositions that

22  their IHSS providers might leave them if the wages are reduced."

23  Opp. at 6-7.  However, the Court relied on these same declarations

24  in its preliminary injunction order to conclude the following:

25       The wage reductions will cause many IHSS providers to leave
         employment, which in turn will leave consumers without IHSS
26       assistance.  The consumers' quality of life and health care
         will be greatly diminished, which will likely cause great
27       harm to disabled individuals.  For instance, the
         declarations submitted by Plaintiffs describe harms ranging
28       from going hungry to dehydration, to falls and burns, to an

United States District Court
For the Northern District of California

1
2
3

> inability ever to leave the home.  Institutionalizing
> individuals that can comfortably survive in their home with
> the help of IHSS providers will cause Plaintiffs to suffer
> injury to their mental and physical health, including a
> shortened life, and even death for some Plaintiffs.

4   Order Granting Prelim. Inj. at 11.  The Court reaffirms these

5   conclusions.  Accordingly, Plaintiffs have met injury in fact

6   requirement for standing.

7   I.   Rule 23(a) Requirements

8        A.   Numerosity

9        "The prerequisite of numerosity is discharged if 'the class is

10  so large that joinder of all members is impracticable.'"  <u>Hanlon v.</u>

11  <u>Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed.

12  R. Civ. P. 23(a)(1)).  Here, Plaintiffs claim that the proposed

13  class comprises tens of thousands of low income senior citizens and

14  people with disabilities who receive services from IHSS providers

15  through California's Medi-Cal program.  Defendants concede that

16  Plaintiffs meet the numerosity requirement, and the Court finds

17  that it is satisfied.

18       B.   Commonality

19       Rule 23(a)(2) requires that there be "questions of law or fact

20  common to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit

21  has explained that Rule 23(a)(2) does not preclude class

22  certification if fewer than all questions of law or fact are common

23  to the class.  "All questions of fact and law need not be common to

24  satisfy the rule.  The existence of shared legal issues with

25  divergent factual predicates is sufficient, as is a common core of

26  salient facts coupled with disparate legal remedies within the

27  class."  <u>Hanlon</u>, 150 F.3d at 1019.

28       In civil rights suits, "commonality is satisfied where the

**United States District Court**
For the Northern District of California

lawsuit challenges a system-wide practice or policy that affects all of the putative members." Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001). "In such circumstances, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." Id.

The common issues of law and fact for Plaintiffs' proposed class include: (1) whether the State failed adequately to consider the impact of section 12306.1(d)(6) on efficiency, economy, quality of care, and access to services prior to enacting the statute, in violation of Section 30(A) of the federal Medicaid Act; (2) whether the IHSS provider wages and benefits that would result from the implementation of section 12306.1(d)(6) would be inconsistent with Medicaid's mandated quality of care in violation of Section 30(A) of the federal Medicaid Act;[6] and (3) whether the implementation of section 12306.1(d)(6) would violate the rights of class members to be free from discrimination on the basis of their disability under the ADA, 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), by forcing disabled individuals who could otherwise remain in their homes to enter nursing homes or other residential institutions.

The common issues of law and fact pertaining to the Fresno Subclass are whether the reduction of IHSS wages from $10.25 per hour to $9.50 per hour and of the IHSS benefits rate from $.85 per hour to $.60 would violate the rights of class members to be free

---

[6]State Defendants note that class certification of the Section 30(A) claims is not necessary because the injunctive relief Plaintiffs seek benefits all putative members. See Access Now Inc. v. Walt Disney World Co., 211 F.R.D. 452, 455 (M.D. Fla. 2001). While this may be true, it does not make granting class certification of these claims improper.

**United States District Court**
For the Northern District of California

from discrimination on the basis of their disability under the ADA, 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), by forcing disabled individuals who could otherwise remain in their homes to enter nursing homes or other residential institutions.

State and Fresno Defendants argue that the disparity in the manner in which counties have responded to section 12306.1(d)(6) and the varying circumstances of individual class members regarding their health, the services they receive and the county in which they live precludes a finding of commonality. However, the differences that exist here do not justify requiring individuals, who would no longer receive assistance from IHSS if § 12306.1(d)(6) were in effect, to prosecute separate actions.

With respect to the first two causes of action, the varied responses of individual counties to the State's enactment of § 12306.1(d)(6) are irrelevant to the State's duty under Section 30(A) of the Medicaid Act. Similarly, with the respect to the ADA and Rehabilitation Act claims, Plaintiffs' theory is that the decrease in IHSS provider rates in the twenty-one counties that paid more than $9.50 in wages before the statute was to be implemented would reduce the number of IHSS providers in those counties and increase the risk of institutionalization of disabled and elderly individuals in violation of these statutes. Plaintiffs' theory challenges the aggregate effect of § 12306.1(d)(6), which can efficiently be adjudicated on a class-wide basis, even if the specific rate decreases vary among counties. Further, as noted above, common allegations that Defendants' laws and policies are discriminatory suffice to

11

establish commonality of claims even where individual class members' factual circumstances differ.  <u>See</u> <u>Armstrong</u>, 275 F. 3d at 868; <u>Walters v. Reno</u>, 145 F.3d 1032, 1046 (9th Cir. 1998) ("Differences among the class members" did not preclude class certifications of plaintiffs' claims that challenged "general practices" of government agency); <u>Jordan v. Los Angeles County</u>, 669 F.2d 1311, 1320 (9th Cir. 1982) <u>vacated and rem'd on other grounds</u>, 459 U.S. 810 (1982) ("[T]he legality of defendant's practice or policies will usually be a question common to the class, and the existence of different factual questions with respect to various [plaintiffs] will not defeat satisfaction of the commonality requirement"); <u>Arnold v. United Artists Theatre Circuit, Inc.</u>, 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Accordingly, Plaintiffs have satisfied the commonality requirement of Rule 23(a).

C.    Typicality

       The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). "Where the challenged conduct is a policy or practice that affects all class members, the underlying issue presented with typicality is similar to that presented with respect to commonality, although the emphasis may be different.  <u>Armstrong</u>, 275 F.3d at 868-69.  The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992) (quoting <u>Schwartz v. Harp</u>, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  "Under

United States District Court
For the Northern District of California

the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." <u>Hanlon</u>, 150 F.3d at 1020.

Here, named Plaintiffs' claims mirror those of the class as a whole.  Named Plaintiffs and unnamed class members receive IHSS services that allow them to remain safely at home; and, with the passage of § 12306.1(d)(6), named Plaintiffs and unnamed class members are threatened by the same risk of losing critical services and of possible institutionalization.  Further, named Plaintiffs in the Fresno Subclass face the same risk of harm as the unnamed members of the Fresno Subclass because Fresno Defendants' conduct allegedly will lead to a reduction in the number of IHSS providers, which will result in IHSS recipients becoming unable to live outside of an institution.

Fresno Defendants respond that named Plaintiffs' claims are not typical of Fresno class members because Defendants plan to present "unique defenses which threaten to become the focus of the litigation." <u>Hanon</u>, 976 F.2d at 508.  Specifically, Fresno Defendants claim that Fresno County has independent grounds for reducing IHSS wages and Plaintiffs from other counties are not subject to these defenses.  However, the creation of a Fresno Subclass addresses this issue.  Only the named Plaintiffs from Fresno and the Fresno Subclass are suing Fresno and any purported defense available to Fresno Defendants would affect all members of the Fresno Subclass equally.  Thus, defenses that might apply to the Fresno Subclass will not become the focus of the litigation.

State Defendants argue that the proposed creation of a Fresno

13

Subclass is an admission that there is no typicality among the named Plaintiffs.  The named Plaintiffs from Fresno County bring separate claims against both State Defendants and Fresno Defendants.  There is no reason why a separate claim against Fresno Defendants necessarily impacts the typicality requirement.  In sum, Plaintiffs satisfy the typicality requirement of Rule 23(a).

D.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement consists of two inquiries: "(1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 958 (9th Cir. 2003).

State Defendants argue that the class representatives are inadequate because they reside in only four of the twenty-one counties that they seek to represent and the IHSS programs and program recipients vary by county.  State Defendants do not address how these points are relevant to demonstrating antagonism within the class or to whether named Plaintiffs will prosecute the action vigorously.  Plaintiffs adequately allege that section 12306.1(d)(6), if not enjoined, would apply equally to all members of the proposed class, and injunctive relief would benefit all members of the class.  Plaintiffs have satisfied the adequacy prong of 23(a).

II.  Class Certification Under Rule 23(b)(2)

Plaintiffs move that the class be certified as an injunctive

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

relief class under Rule 23(b)(2).  Rule 23(b)(2) permits
certification where "the party opposing the class has acted or
refused to act on grounds that apply generally to the class, so
that final injunctive relief or corresponding declaratory relief is
appropriate respecting the class as a whole."  Fed. R. Civ. P.
23(b).  "Class certification under Rule 23(b)(2) is appropriate
only where the primary relief sought is declaratory or injunctive."
Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1195
(9th Cir. 2001).

     Although common issues must predominate for class
certification under Rule 23(b)(3), no such requirement exists under
Rule 23(b)(2).  "It is sufficient if class members complain of a
pattern or practice that is generally applicable to the class as a
whole. Even if some class members have not been injured by the
challenged practice, a class may nevertheless be appropriate."
Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998); see 7A
Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal
Practice & Procedure § 1775 (2d ed. 1986) ("All the class members
need not be aggrieved by or desire to challenge the defendant's
conduct in order for some of them to seek relief under Rule
23(b)(2)."); see also Adamson v. Bowen, 855 F.2d 668, 676 (10th
Cir. 1988) (emphasizing that, although "the claims of individual
class members may differ factually," certification under Rule
23(b)(2) is a proper vehicle for challenging "a common policy").

     Plaintiffs challenge the implementation of § 12306.1(d)(6),
which applies to all members of the proposed class and subclass,
even if its effects are experienced differently by individual IHSS
recipients throughout California.  Class certification for

injunctive relief is appropriate in this case because State and Fresno Defendants are alleged to have acted "on grounds that apply generally to the class." Accordingly, the Court certifies a class under Rule 23(b)(2).

III. Class Definition

State Defendants argue that Plaintiffs' proposed class definition is too broad because named Plaintiffs cannot represent IHSS recipients in counties other than those in which they live. State Defendants assert that the Court should narrow the class to the counties in which named Plaintiffs reside, if those counties sought to reduce IHSS provider wages and benefits. Their argument is not persuasive. Plaintiffs may represent a class of IHSS consumers in all counties where, at the time section 12306.1(d)(6) was implemented, IHSS providers were paid wages that exceeded $9.50 per hour or paid a combination of wages and benefits that exceeded $10.10 per hour. Plaintiffs allege that, had section 12306.1(d)(6) not been enjoined, IHSS consumers in each of these counties would have been affected. At this stage in the litigation, it does not matter that not all of the twenty-one counties that fit this description did not seek to reduce provider rates immediately on the law's effective date. If the State were not enjoined, these counties would be impacted by the rate change. Therefore, the Court will accept Plaintiffs' proposed class definition.

CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(2) for injunctive and declaratory relief. Docket No. 245. The Court notes that, although it grants certification,

United States District Court
For the Northern District of California

"[d]eterminations to certify a class depend on initial predication and are always subject to revision." <u>Tardiff v. Knox County</u>, 365 F.3d 1, 6 (1st Cir. 2004).  The Court can always decertify the class should that become necessary.

    For the first through fourth causes of action against State Defendants, the Plaintiff Class is defined as:

> All In-Home Supportive Services consumers residing in Alameda, Calaveras, Contra Costa, Fresno, Marin, Mendocino, Monterey, Napa, Placer, Riverside, Sacramento, San Benito, San Francisco, San Luis Obispo, San Mateo, Santa Barbara, Santa Clara, Santa Cruz, Solano, Sonoma and Yolo counties.

For the third and fourth causes of action against Fresno Defendants, the Fresno Subclass is defined as: "All In-Home Supportive Services consumers residing in Fresno County."

    The Court appoints Plaintiffs' counsel to serve as class counsel. Plaintiffs need not notify absent class members of the certification.  Fed. R. Civ. P. 23(c)(2)(A).

    IT IS SO ORDERED.

Dated: 06/08/10

_____
CLAUDIA WILKEN
United States District Judge