United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LYDIA DOMINGUEZ, et al.,

Plaintiffs,

v.

ARNOLD SCHWARZENEGGER, et al.,

Defendants.

______________________________________/

No. C 09-02306 CW

ORDER GRANTING PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

Plaintiffs apply for a temporary restraining order and order to show cause why a preliminary injunction should not issue to prohibit Defendants from implementing an In Home Supportive Services (IHSS) rate reduction in Fresno County from $10.25 to $8.00 in hourly wages, and from $0.85 to $0.60 in hourly benefit contributions. State Defendants and Fresno County Defendants both oppose Plaintiffs' application for a temporary restraining order and order to show cause. The matter was heard on June 29, 2010. Having considered all of the parties' papers and oral argument on the motions, the Court concludes that Plaintiffs have established a likelihood of success on their claim that State Defendants have violated the procedural requirements of the Medicaid Act. The Court also concludes that Plaintiffs will suffer irreparable injury

United States District Court
For the Northern District of California

in the absence of temporary relief. The balance of equities is in Plaintiffs' favor and a temporary restraining order is in the public interest. Accordingly, the Court grants Plaintiffs' application for a temporary restraining order and orders Defendants to show cause why a preliminary injunction should not issue.

BACKGROUND

Over thirty years ago, California established the IHSS program to provide assistance with the tasks of daily living to low-income elderly and disabled persons "who cannot safely remain in their homes or abodes of their own choosing unless these services are provided." Cal. Welf. & Inst. Code § 12300(a). IHSS providers give services such as assistance with bathing, dressing, cooking, feeding, bowel and bladder care, self-administration of medication and cleaning. Id. § 12300(b), (c). Over 360,000 IHSS providers serve over 440,000 individuals in California. As of May 31, 2010, 10,116 IHSS providers serve 12,028 individuals in Fresno. Katz Decl., Ex. 1. Seventy-two percent of providers in Fresno are family members of IHSS recipients. Id.

IHSS is administered by the State's counties. Fifty-six of California's fifty-eight counties have established either a public authority (PA) or a non-profit consortium (NPC) to deliver IHSS services. Each of these fifty-six counties has created and maintains a registry from which service providers can be drawn. As of June 1, 2010, there were 361 persons in the Fresno registry, who are currently seeking employment as an IHSS provider. Katz Decl. ¶ 4. These PAs and NPCs are considered employers of IHSS providers for some purposes, including collective bargaining agreements pertaining to providers' wages and benefits; however, individual

consumers hire, fire and supervise their own IHSS providers. Id. § 12301.6(c)(1).

Each county establishes the providers' wages and benefits. Thus, the rates paid to IHSS providers vary by county. Because most IHSS consumers participate in California's Medicaid program, the federal government pays for about sixty-two percent of the IHSS program's costs.[1] See 42 U.S.C. § 1396d(b). The State pays sixty-five percent and the county pays thirty-five percent of the remaining thirty-eight percent of the program's costs. Cal. Welf. & Inst. Code § 12306. The State's contribution, however, is subject to a statutory cap. Currently, the maximum state contribution is sixty-five percent of the non-federal share of a wage and benefit package of $12.10 per hour. Id. at § 12306.1(c)-(d).

Wages and benefits are determined through the collective bargaining process at the county level. Once these wages and benefits are decided, they must be submitted to the California Department of Health Care Services to ensure that they comply with all applicable state and federal laws. Id. § 12306.1(a)-(b).

In response to California's unprecedented budget crisis, on February 20, 2009, the Governor signed into law California Welfare and Institutions Code § 12306.1(d)(6). Scheduled to take effect July 1, 2009, the law would have reduced the State's maximum contribution in wages and benefits from sixty-five percent of the non-federal share of an hourly rate of $12.10 to sixty-five percent

---

[1]Before the passage of the American Recovery and Reinvestment Act of 2009, the federal government contributed fifty percent of the program's costs. Dominguez v. Schwarzenegger, 595 F.3d 1087, 1091 n.2 (9th Cir. 2010).

United States District Court
For the Northern District of California

of the non-federal share of an hourly rate of $10.10.

On June 4, 2009, Plaintiffs filed this class action complaint and moved for entry of a preliminary injunction prohibiting State Defendants from implementing section 12306.1(d)(6) pending a final decision on the merits. On June 26, 2009, the Court granted Plaintiffs' motion and found that they had demonstrated a strong likelihood of success on their first cause of action, that State Defendants had violated the federal Medicaid Act by failing to consider the factors set forth in 42 U.S.C. § 1396a(a)(30)(A) (Section 30(A)) before enacting section 12306.1(d)(6). The Court also concluded that, absent immediate injunctive relief, both IHSS consumers and providers would suffer irreparable harm as a result of the wage reductions caused by the implementation of section 12306.1(d)(6).

Thereafter, Fresno County proceeded to reduce IHSS provider wages for reasons other than section 12306.1(d)(6). Plaintiffs' instant application for a temporary restraining order concerns this attempted reduction.

The memorandum of understanding which set Fresno's IHSS providers' wages and benefits at a combined rate of $11.10 expired on September 30, 2009. After months of negotiations between the Fresno IHSS PA and the Service Employees International Union, California State Council (SEIU), the parties reached an impasse. In mid-April, 2010, Fresno informed the union that it intended to reduce IHSS wages to $8.00 per hour (the state minimum wage, Cal. Labor Code § 1182.12) and benefits to $0.60 per hour, effective July 1, 2010. On May, 25, 2010, the Fresno County Board of Supervisors approved the rate reduction. The following day, Fresno

submitted its rate change request to the California Department of Social Services and the Department of Health Care Services for approval. On June 24, the State approved Fresno's rate decrease. Romero Decl., Ex. E.[2] The State admits that it did not perform any study assessing the impact of the rate reduction on IHSS consumers or providers before approving the rate request.

Plaintiffs claim that the twenty percent rate reduction will severely affect IHSS providers. Many IHSS providers will have to seek other employment, and many of those that remain in their job will no longer be able to pay for basic needs such as food, health care and housing. Howes Decl. ¶ 88; Aguilar Decl. ¶ 4; Bailey Decl. ¶ 6; Boushele Decl. ¶ 6; M. Garcia Decl. ¶ 5; Jones Decl. ¶ 65; Moreno Decl. ¶ 7; Thao Decl. ¶ 9; Muniz Decl. ¶ 4; Ward Decl. ¶¶ 4-5; Wright Decl. ¶ 5; Maiden Decl. ¶ 4; Singh Decl. ¶ 4. Many of these providers are family members of IHSS consumers and are responsible for providing housing, food, medication, and other necessities for their elderly or disabled relative. Plaintiffs assert, therefore, that both the providers and IHSS consumers are likely to suffer serious deprivations. Brown Supp. Decl. ¶ 9; Cendejas Decl. ¶ 4; Everhardt Decl. ¶ 4; Leon Decl. ¶ 5; Martinez Decl. ¶ 6; Perez Decl. ¶ 5; Valdez Decl. ¶ 4.

Plaintiffs also claim that the rate reduction will force many IHSS consumers into difficult, if not untenable, positions. The IHSS consumers who lose their providers will either have to find another provider, attempt to live in their homes without IHSS

---

[2]Plaintiffs object to the Declaration of Rolonda Moen submitted in support of State Defendants. The objection is overruled as moot because the Court did not rely on any aspect of the declaration to which Plaintiffs objected.

United States District Court
For the Northern District of California

services or enter institutional care. The individuals who can find new providers at the lower wage will be harmed by the loss of continuity of care and disruption of relationships that often take months or years to build. Lee Decl. ¶ 5; Hanlon Decl. ¶ 6; Hopkins Decl. ¶ 6; Moore Decl. ¶ 6; Steward Decl. ¶ 7. Even before the rate reduction, IHSS recipients have reported extreme difficulty in finding adequate providers. For example, at least one recipient spent weeks in a nursing home until she could secure a provider. See eg., Hopkins Decl. ¶ 6.

Plaintiffs also assert that some consumers will be forced to enter nursing facilities or other residential institutions because of their inability to remain in their homes without the help of IHSS providers. Howes Decl. ¶¶ 4, 76-84; Buckley Decl. ¶ 6; Jones Decl. ¶ 8; R. Garcia Decl. ¶ 5; Hopkins Decl. ¶¶ 6-7; Moreno Decl. ¶ 8; Bailey Decl. ¶ 8; Miller Supp. Decl. ¶ 6; Moore Decl. ¶ 6; Gilchrist Decl. ¶ 6; Schnelle Decl. (Dkt. 45) ¶ 5; Altman Decl. (Dckt. 6) ¶ 6. Plaintiffs claim that the consequences of institutionalization, which include loss of independence and reduced quality of care, would be devastating for individuals who are currently able to live moderately independent lives in their homes. Miller Supp. Decl. ¶ 5; Wilkins Supp. Decl. ¶ 6; R. Garcia Decl. ¶ 5; Gilchrist Decl. ¶ 7; Hanlon Decl. ¶ 7; Hopkins Decl. ¶ 7; Vang Decl. ¶ 7; Lee Decl. ¶ 7; Moore Decl. ¶ 7.

Lastly, Plaintiffs assert that the wage decrease will also cause the State to incur millions of dollars in increased institutionalization costs, as well as to lose significant tax revenues and incur other Medi-Cal expenses. Howes Decl. ¶¶ 9-10; 88-89 & nn.2-3; see also LaPlante Decl. (Dkt. 28) ¶ 8; Altman Decl.

United States District Court
For the Northern District of California

(Dkt. 6) ¶ 6.

Fresno County states that it is in dire financial straights and that it cannot afford to continue to pay IHSS providers wages and benefits of $11.10 per hour. Over the last four years, the County has cut 1,504 positions, in addition to a projection of an addition 369 layoffs for the 2010-2011 fiscal year. Kovacevic Decl. ¶ 11. Fresno claims that, to maintain the current IHSS wages, it would be forced to operate at a deficit each month in the amount of $435,455, which equals $5,225,455 for the year. Id. ¶ 12.

LEGAL STANDARD

"The standard for issuance of a temporary restraining order is the same as that for issuance of a preliminary injunction." Burgess v. Forbes, 2009 WL 416843, at *2 (N.D. Cal.). To obtain a preliminary injunction, the moving party must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., ___ U.S. ___, 129 S. Ct. 365, 374 (2008).

DISCUSSION

I. Likelihood of Success on the Merits

To receive federal financial participation in payment for services that states provide to low income persons who are aged, blind, disabled or members of families with dependent children, states must agree to comply with applicable federal Medicaid law. Orthopaedic Hosp. v. Belshe, 103 F.3d 1491, 1493 (9th Cir. 1997). The Medicaid Act requires a participating state to develop a state

United States District Court
For the Northern District of California

plan which describes the policy and methods to be used to set payment rates for each type of service included in the program. 42 C.F.R. § 447.201(b). A provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(30)(A) (hereinafter Section 30(A)), requires, in relevant part, that a state's Medicaid plan:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary . . . to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

The Ninth Circuit has noted that "providers' wages and benefits . . . are directly correlated to ensuring that services are consistent with efficiency, economy, and quality of care, and sufficient to ensure access to services under the IHSS program." Dominguez, 596 F.3d at 1093; see also Orthopaedic Hosp. v. Belshe, 103 F.3d 1491, 1493 (9th Cir. 1997) ("payments for [Medi-Cal] services must be consistent with efficiency, economy, and quality of care, and . . . those payments must be sufficient to enlist enough providers to provide access to Medicaid recipients.").

Because State Defendants' approval of the Fresno rate reduction "directly affects what Medi-Cal providers are paid for providing services," Dominguez, 596 F.3d at 1093 (emphasis in original), this action requires compliance with Section 30(A). Id. at 1094 ("The Department [of Social Services] is thus well aware that prior to approving reimbursement rates established through collective bargaining, it must determine whether sufficient access

United States District Court
For the Northern District of California

to services is available.").[3] Thus, State Defendants' approval of the Fresno County rate change request cannot be valid unless State Defendants "actually considered" an analysis regarding the impact of the requested change on access and quality of care, prior to approving the request. California Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 850 (9th Cir. 2009).

The State cannot abdicate this responsibility by relying on the fact that, through collective bargaining, the counties determine IHSS wages and benefits. Martinez v. Schwarzenegger, 2009 WL 1844989, at *5 (N.D. Cal.) ("a county's role in determining IHSS wages and benefits does not preclude the State from analyzing the impact of [a rate reduction] on the Section 30(A) factors prior to enactment"). Under the Medicaid Act, the State, not the individual counties, is bound by Section 30(A) as a condition of Medicaid participation to ensure that rates are consistent with

---

[3]Fresno Defendants argue that this portion of Dominguez is dicta because the primary issue before the court was whether the State violated Section 30(A) when enacting California Welfare & Institutions Code § 12306.1(d)(6) without conducting a Section 30(A) analysis. The Ninth Circuit has noted that "'where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.'" Cetacean Cmty. v. Bush, 386 F.3d 1169, 1173 (quoting United States v. Johnson, 256 F.3d 895, 914 (9th Cir. 2001) (Kozinski, J., concurring)). This is true "regardless of whether it was in some technical sense 'necessary' to [the court's] disposition of the case," so long as the issue was "addressed . . . and decided . . . in an opinion joined in relevant part by a majority of the panel." Barapind v. Enomoto, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc). Here, even if the quoted portions of Dominguez were not "germane" to the resolution of case, the Court finds them persuasive. The Ninth Circuit was directly responding to State Defendants' argument that Section 30(A) did not apply to it because counties controlled rate setting. The court held that the State must ensure compliance with Section 30(A) when approving counties' proposed rates because of the integral role and oversight the State plays by approving those rate changes.

United States District Court
For the Northern District of California

quality care and are sufficient to enlist enough providers so that care and services are available. See 42 C.F.R. § 431.10 (requiring that single state agency be responsible for administration of State's Medicaid program).

Here, the State does not put forth any evidence that it considered the Section 30(A) factors before approving the rate change request submitted by Fresno. Accordingly, the Court concludes that Plaintiffs have made a strong showing of likelihood of success on the merits that Defendants violated the procedural requirements of Section 30(A).

Because the Court concludes that a temporary restraining order is warranted based on Plaintiffs' likelihood of success on their procedural claim, the Court need not determine the likelihood of Plaintiffs' success on their claim that Defendants violated the substantive requirements of Section 30(A) or their claim that Defendants violated the Americans with Disabilities Act.

II. Irreparable Harm, Balance of Hardships and the Public Interest

IHSS consumers will suffer immediate and irreparable harm unless the Court issues a temporary restraining order. As the Court previously recognized when it enjoined section 12306.1(d)(6):

> The wage reductions will cause many IHSS providers to leave employment, which in turn will leave consumers without IHSS assistance. The consumers' quality of life and health-care will be greatly diminished, which will likely cause great harm to disabled individuals. For instance, the declarations submitted by Plaintiffs describe harms ranging from going hungry and dehydration, to falls and burns, to an inability ever to leave the home. Institutionalizing individuals that can comfortably survive in their home with the help of IHSS providers will "cause Plaintiffs to suffer injury to their mental and physical health, including a shortened life, and even death for some Plaintiffs." Crabtree v. Goetz, 2008 WL 5330506, at *30 (M.D. Tenn.).

Prelim. Inj. Order (Dkt. 131) at 10:26-11:10.

United States District Court
For the Northern District of California

Similarly, the wage reductions at issue here are likely to cause many providers to reduce their hours or quit IHSS employment entirely. Howes Decl. ¶¶ 71-75; Aguilar Decl. ¶ 4; Bailey Decl. ¶ 6; Boushele Decl. ¶ 6; M. Garcia Decl. ¶ 5; Jones Decl. ¶ 6; Moreno Decl. ¶ 7; Thao Decl. ¶ 9; Muniz Decl. ¶ 4; Ward Decl. ¶ 5; Wright Decl. ¶ 5; Altman Decl. (Dkt. 6) ¶ 4. This will likely force IHSS recipients to go without IHSS assistance for some period of time, or worse, enter a nursing home or other institutional facility. The quality of these consumers' lives and health care will be greatly diminished, causing them irreparable harm.

IHSS providers will also suffer immediate and irreparable harm. Although financial injury is generally not adequate to establish irreparable harm, L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 643 F.2d 1197, 1202 (9th Cir. 1980), financial harm to the IHSS providers is irreparable because retrospective monetary damages are unavailable due to the State Defendants' Eleventh Amendment immunity. California Pharmacists, 563 F.3d at 851-52 ("[B]ecause the Hospital Plaintiffs and their members will be unable to recover damages against the Department even if they are successful on the merits of their case, they will suffer irreparable harm if the requested injunction is not granted."). Further, the planned wage reduction "would impact many providers' ability to afford such basic necessities as food, clothing, utilities, and rent." Dominguez, 596 F.3d at 1098; see also Bailey Decl. ¶ 6, Boushele Decl. ¶ 6; Maiden Decl. ¶ 4; Singh Decl. ¶ 4; Ward Decl. ¶ 4; Brown Supp. Decl. ¶ 9; Cendejas Decl. ¶ 4; Everhardt Decl. ¶ 4; Leon Decl. ¶ 5; Martinez Decl. ¶ 6; Perez Decl. ¶ 5; Valdez Decl. ¶ 4.

United States District Court
For the Northern District of California

The balance of hardships and the public interest also weigh in Plaintiffs' favor. If the temporary restraining order does not issue, the State and Fresno Defendants' sole injury will be the financial costs associated with continuing to participate under the current IHSS provider wages. The Court notes that there is persuasive evidence that the wage cuts would actually cost the State and Fresno County tens of millions of additional dollars because in-home care is considerably less expensive than institutional care and IHHS providers reduce the need for expensive emergency room visits. Accordingly, the financial loss the State and Fresno County will suffer if the wage reduction is not implemented does not outweigh the hardship Plaintiffs would suffer absent a temporary restraining order. Lastly, the public interest weighs heavily in favor of granting relief. "It would be tragic, not only from the standpoint of the individuals involved but also from the standpoint of society, were poor, elderly, disabled people to be wrongfully deprived of essential benefits for any period of time." Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983).

III. Bond

Federal Rule of Civil Procedure 65(c) "invests the district court 'with discretion as to the amount of security required, if any.'" Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original; quoting Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999)). A district court has the discretion to dispense with the security requirement where giving security would effectively deny access to judicial review. See Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1126 (9th Cir. 2005) (citation omitted). Similarly, a district court may waive the bond

requirement where the plaintiffs are indigent. See Walker v. Pierce, 665 F. Supp. 831, 844 (N.D. Cal. 1987). The Court waives the bond requirement for Plaintiffs because many of them are indigent and to ensure their ability to access the courts on behalf of themselves and other class members.

CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' application for a temporary restraining order and order to show cause why a preliminary injunction should not issue. Docket No. 287. As set forth in the separately filed temporary restraining order, Defendants are enjoined and restrained from implementing Fresno's wage and benefits reductions. The Court also grants Plaintiffs' motion to exceed the page limit for their reply. Docket No. 355.

IT IS SO ORDERED.

Dated: 07/02/10

CLAUDIA WILKEN
United States District Judge