United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lydia Dominguez, et al., | No. C 09-2306 CW  (JL) |
| Plaintiffs, | |
| v. | ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL (Docket # 344); AND GRANTING IN PART DEFENDANTS' REQUEST FOR ADDITIONAL DEPOSITIONS (Docket # 388 ) |
| Arnold Schwarzenegger, et al., | |
| Defendants. | |
| _____/ | |

## I.    Introduction

All discovery in this case has been referred by the district court (Hon. Claudia Wilken) under 28 U.S.C. §636(b). Plaintiffs move to compel production of documents which have been the subject of a previous order by this Court (Order e-filed May 12, 2010 at Docket # 280). The parties also filed a Joint Statement regarding Defendants' request for leave to take additional depositions. The Court grants both motions, in part, as discussed below. Plaintiffs' motion for attorney fees is denied without prejudice, pending Defendants' compliance with the Court's order.

## II.    Background

On February 20, 2009, Governor Schwarzenegger signed into law California Welfare and Institutions Code § 12306.1(d)(6), a bill reducing the maximum state reimbursement rate for California's In-Home Supportive Services ("IHSS") program.  *Dominguez v. Schwarzenegger*, 596 F.3d 1087, 1091 (9th Cir. 2010).  IHSS subsidizes in-home care for

**United States District Court**
For the Northern District of California

1   individuals who are too ill to meet their own cooking, cleaning, grooming or other personal

2   needs.  *Id.*

3         Plaintiffs in this case include unions representing IHSS service providers and

4   Californians who rely on IHSS-funded care to maintain their independence and live at

5   home.  Plaintiffs claim that by enacting § 12306.1(d)(6), the State violated substantive and

6   procedural provisions of the federal Medicaid Act, codified at 42 U.S.C. § 1396a(a)(30)(A)

7   (hereinafter,"§ 30(A)").  Specifically, Plaintiffs claim that the State failed to comply with §

8   30(A)'s requirement that the State must arrange to pay for IHSS services in a manner

9   "consistent with efficiency, economy, and quality of care."  The Ninth Circuit has interpreted

10  § 30(A) to require that the State:

11        "set hospital outpatient reimbursement rates that bear a reasonable
      relationship to efficient and economical hospitals' costs of providing quality
12        services, unless the Department shows some justification for rates that
      substantially deviate from such costs. To do this, the Department must rely on
13        responsible cost studies, its own or others', that provide reliable data as a
      basis for its rate setting."

14

15  *Dominguez*, 596 F.3d at 1093 (quoting *Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491, 1496

16  (9th Cir. 1997)).  Plaintiffs contend the State failed to meet these procedural requirements,

17  and seek declaratory and injunctive relief.[1]

18        The District Court (Hon. Claudia Wilken, presiding) granted Plaintiffs' motion for a

19  preliminary injunction on June 26, 2009.  The Ninth Circuit affirmed the preliminary

20  injunction on appeal on March 3, 2010, finding that the State law could trigger the

21  requirements of § 30(A) due to the "relationship between [State] reimbursement rates and

22  access to in-home supportive services."  *Dominguez*, 596 F.3d at 1094.  State Defendants

23  have petitioned the United States Supreme Court for a writ of certiorari.

24        Plaintiffs are a proposed class of tens of thousands of individuals who currently

25  receive assistance through IHSS and the unions who represent IHSS providers. Plaintiffs

26  seek declaratory and injunctive relief to enforce (1) the procedural and substantive

27   

28        [1]Plaintiffs also brought claims under the Americans with Disabilities Act and the Rehabilitation Act; only the § 30(A)-based claims are at issue in this discovery dispute.

United States District Court

For the Northern District of California

1  requirements of the Medicaid Act, 42 U.S.C. § 1396a(a)(30)(A) and (2) and the

2  antidiscrimination provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. §

3  12132 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). On June 8,

4  2010, Judge Wilken granted Plaintiffs' motion for certification under Federal Rule of Civil

5  Procedure 23(b)(2) of a class composed of IHSS consumers residing in twenty-one

6  counties and a subclass composed of IHSS consumers residing in Fresno county.

7  **III.    Disputed Discovery**

8  Discovery was referred to this Court on April 4, 2010.  Plaintiffs brought a motion to

9  compel an adequate response to Plaintiffs' Interrogatory Three, which requested the

10  following:

11  "All documents memorializing or relating to communications between State
   Defendants and officials of the federal government, or internal

12  communications between State Defendants or any of their officers,
   employees, or agents, discussing, analyzing, reflecting, or otherwise relating

13  to §12306.1(d)(6)."

14  (Thoreen Decl. 4/28/2010, Ex. A.)

15  Defendants objected on grounds of relevance, attorney-client privilege, deliberative

16  process privilege, and the attorney work-product doctrine, and refused to produce any

17  documents.  (*Id.* at Ex. B.)  Defendants argued that Interrogatory Three was irrelevant

18  because it sought discovery on a matter that the Ninth Circuit's opinion had rendered moot

19  (namely, whether § 12306.1(d)(6) "set" or "affected" rates paid to IHSS providers).  (Defs.'

20  Opp., Dkt. 275 at 4.)

21  Plaintiffs moved to compel a response, leading to this Court's Order of May 12,

22  2010.  The Court rejected Defendants' claim that Interrogatory Three was irrelevant

23  following the Ninth Circuit's opinion, observing that that opinion was pending appeal and, in

24  any event, only concerned a preliminary injunction (not a determination on the merits).

25  Moreover, Defendants had not stipulated to Plaintiffs' claim regarding § 12306.1(d)(6) or

26  otherwise conceded that § 12306.1(d)(6) did indeed reduce rates paid to IHSS workers.

27

28

United States District Court
For the Northern District of California

1    Finally, the Court held that the subject matter of Interrogatory Three remained relevant

2    because the case awaited final judgment in the District Court.  (Order, Dkt. 280 at 7).

3         This Court found that Defendants had failed to meet their burden of establishing that

4    any privilege applied, and warned that the failure to assert privilege in a timely and

5    adequate manner could result in waiver.  The Court reserved judgment as to whether the

6    materials requested actually enjoyed protection under the attorney-client privilege,

7    deliberative process privilege or attorney work product doctrines.  Defendants were ordered

8    to provide a Privilege Log complying with the standards in In re *Grand Jury Investigation*,

9    974 F.2d 1068, 1071 (9th Cir. 1992), within 30 days of May 12, 2010.  (Dkt. 280 at 18.)

10        Defendants provided a two-hundred-page Privilege Log on June 11.  More than half

11   the entries in the document lacked log numbers, and no index was provided.  Defendants

12   filed an amended Privilege Log (with index) on July 2, which listed 846 items with

13   descriptions such as "LAR edits" and "14132.95(j)(2)(A)(iii)."  (Thoreen Decl. 6/25 Ex. A at

14   121.)

15        Plaintiffs renewed their motion to compel on June 25, arguing that the Privilege Log

16   was too vague to establish that any privilege attached.  Plaintiffs further dispute

17   Defendants' invocation of the deliberative process privilege, and argue that the Privilege

18   Log listed materials to which no privilege could apply because an attorney had neither sent

19   nor received them.  (Pls.' Supp. Br. i.)  Plaintiffs also point to gaps in the Bates numbering

20   reflected in the Privilege Log (and to discrepancies between the first and second versions)

21   to support their theory that Defendants are withholding additional discoverable material.

22   Finally, Plaintiffs seek to recover more than $18,000 for attorney fees and costs spent

23   pursuing their motion to compel.

24        In their opposition, Defendants renew their earlier claim that the Ninth Circuit's ruling

25   rendered Interrogatory Three moot and irrelevant.  (Defs.' Opp. 2:4) ("[I]t is quite clear that

26   there is nothing left to litigate at the district court level . . . . ").  Defendants contend that the

27   "law of the case" doctrine compels this result.  *Id.*  In addition, Defendants point out that if

28   the Supreme Court reverses the Ninth Circuit, Plaintiffs will no longer have a cause of

**United States District Court**
For the Northern District of California

1  action for which Interrogatory Three would be relevant.  Defendants claim that they have

2  properly invoked attorney-client privilege, deliberative process privilege, and the attorney

3  work product doctrine.  Lastly, Defendants maintain that the apparent omissions and

4  deletions identified by Plaintiffs are the result of hasty editing, deduplication of emails, and

5  other innocent errors or corrections.

6  **IV.    Analysis**

7  **A.    Party resisting discovery has burden**

8  Fed. R. Civ. P 26(b) provides that a party "may obtain discovery regarding any

9  nonprivileged matter that is relevant to any party's claim or defense."  The party resisting

10  discovery "has the burden of clarifying, explaining, and supporting its objection."  *Oakes v.*

11  *Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Cal.1998).  This Court addresses

12  Defendants' claims regarding relevance and privilege in the context of Interrogatory Three

13  and the Privilege Log furnished by Defendants.

14  **B.    Plaintiffs' Interrogatory Three seeks materials relevant to a disputed**
    **claim in this case**.

15  In its Order of May 12, 2010, this Court ruled that the communications sought in

16  Interrogatory Three are "relevant to the general subject matter of the action and . . . directly

17  relevant to a defense;" namely, that § 12306.1(d)(6) did not have the effect of reducing the

18  rates paid to IHSS providers.  (Dkt. 280 at 9:6-7.)  The Court made this determination after

19  weighing and rejecting Defendants' argument that the Ninth Circuit had rendered this

20  discovery irrelevant.  Specifically, the Court found that the Ninth Circuit *did not decide* the

21  question of whether § 12306.1(d)(6) "would have the effect of reducing rates paid to IHSS

22  providers;" instead, "[the Ninth Circuit] only presents that as a possible consequence of the

23  State Defendants' enactment of the statute."  (Dkt. 280 at 8:20-22.)

24  Defendants nonetheless continue to challenge Interrogatory Three as irrelevant,

25  using arguments this Court has already discarded.  The only difference is Defendants'

26  invocation of the Ninth Circuit's opinion as the "law of the case."  The law of the case

27  doctrine holds that when an appeals court "confronts an issue germane to the eventual

28  resolution of [a] case, and resolves it after reasoned consideration . . . that ruling becomes

1  the law of the circuit, regardless of whether doing so is necessary in some strict logical

2  sense." *Cetacean Community v. Bush*, 386 F.3d 1169 (9th Cir. 2004) (Kozinski, J.,

3  concurring).   The doctrine has no bearing here, because this Court found that the Ninth

4  Circuit *had not decided* the issue of whether  § 12306.1(d)(6) had the effect of reducing

5  rates.  As a result, this Court again finds that the materials sought in Plaintiffs' Interrogatory

6  Three are relevant to disputed claims in this case.[2]

7
8
**C.    With few exceptions, Defendants fail to meet their burden to show
that any privilege attaches to the materials requested in Interrogatory
Three.**

9  A party asserting a claim of attorney-client privilege or attorney work-product

10  protection must make a *prima facie* showing that those doctrines apply, typically by

11  submitting a Privilege Log.   In re *Grand Jury Investigation*, 974 F.2d at 1070.  In the Ninth

12  Circuit, a Privilege Log must specify at least the following items:

13
14
15
"(a) the attorney and client involved, (b) the nature of the document, (c) all
persons or entities shown on the document to have received or sent the
document, (d) all persons or entities known to have been furnished the
document or informed of its substance, and (e) the date the document was
generated, prepared, or dated."

16
17  *Id.* at 1071.  Privilege Logs containing generalized allegations and self-serving, conclusory

18  statements regarding privilege will not suffice; the Privilege Log must instead afford the

19  Court an adequate basis for determining that the materials in question are in fact privileged.

20  *See Natural Resources Defense Council v. Gutierrez*, 2008 WL 2468494 at 3,  (N.D. Cal.,

21  Jun. 17, 2008) (log descriptions such as "question regarding e-mail to clients" and

22  "comments on comment responses" insufficient to support privilege claims).

23  Here, Defendants responded to this Court's Order by furnishing one Privilege Log

24  within the deadline (which it now styles a "draft"), and later by submitting an untimely

25
26
27
[2]In their opposition, Defendants also seem to argue that the possibility of reversal by the
Supreme Court (depriving Plaintiffs of a cause of action under § 30(A)) means that Plaintiffs
do not really need the materials sought in Interrogatory Three.  (Defs.' Opp. at 4:23.)  This
contention borders on the frivolous.  Defendants have no lawful basis for avoiding their FRCP
26 obligations in this case simply because some future contingency could resolve the matter.

28

United States District Court

For the Northern District of California

1   "corrected" version.  Neither document affords the Court any basis for determining whether

2   privilege attaches to the majority of emails listed.  Long lists of terse, non-descriptive labels

3   such as "IHSS ARRA" and "DC (ARRA MOE issues)" give no indication of whether the

4   underlying materials merely *mention* the relationship between the IHSS program and

5   ARRA[3] (which would be non-privileged), or whether they are communications seeking legal

6   advice regarding that relationship (and are therefore privileged).  Likewise, frequent use of

7   undefined acronyms and jargon ("DAR," "LAR," "MSR," "GAS," "SOF," "CPE") renders the

8   descriptions in the document largely impenetrable.  *See, e.g.*, Amended Log at 59-63, 87,

9   103 (Dkt. 377 Ex. 2).   In its Order of May 12, the Court warned Defendants that failure to

10  assert privilege in a timely and adequate manner could result in waiver of any privilege, and

11  directed Defendants to supply a Privilege Log under the standards spelled out in In Re

12  *Grand Jury Investigation.*  Defendants' apparent failure to do so would justify the Court in

13  deeming their claims of privilege waived. This Court will nonetheless examine the Privilege

14  Log and attempt to distinguish where Defendants apparently meet their burden of asserting

15  privilege; where they clearly fail to do so; and where the Court (again) lacks sufficient

16  information to decide.

17        **D.    The Privilege Log identifies some items that appear to be attorney-
              client privileged or protected by the attorney work-product doctrine**.
18

19        Attorney-client privilege exists to promote "full and open discussion of the facts and

20  tactics surrounding individual legal matters .... [so that the client] may have adequate

21  advice and a proper defense."  *Mitchell v. Superior Court*, 37 Cal.3d 591, 599, 208

22  Cal.Rptr. 886, 890, 691 P.2d 642 (1984) (citations omitted).  A party asserting the privilege

23

24

25

26

27

28

        _____

        [3]The American Recovery and Reinvestment Act of 2009, Pub. L. 111–5, Feb. 17, 2009,
        123 Stat. 115. ARRA made additional federal funds available for IHSS.

United States District Court
For the Northern District of California

1   must demonstrate that its documents meet the essential requirements[4] of the privilege as

2   adopted in this circuit.  In re *Grand Jury Investigation*, 974 F.2d at 1070.

3          Here, at least some of the items in Defendants' Privilege Log appear to be

4   confidential communications to or from an attorney for the purpose of obtaining legal

5   advice.

6          •   Log # 14, 30, 102-04, 126, 332-33, 327, 462, 602, 605, 635-36, 716, 768-69,

7              797

8   (Amended Privilege Log, Dkt. 377 ex. 2.)

9          The Privilege Log and index indicate that these emails all involve communications

10  with an attorney.  All of them reference legal "analysis," "argument," "opinion" or

11  "justification" concerning the state programs, funding schemes, and statutes at issue in this

12  case; and most of them were sent either during this litigation or just prior to the filing of the

13  complaint on May 29, 2009.  Defendants have met their burden of adequately asserting

14  attorney-client privilege for these items.  Numerous log entries are from lawyers and are

15  described as having to do with "requirements," as in "ARRA requirements and IHSS wages

16  all edits" (Log 690). The Court rejects this approach as requiring too much inference on the

17  Court's part / doing the Defendants' work for them. The Privilege Log indicates that

18  Defendants do not rely solely on the attorney work-product doctrine to withhold any of

19  these emails.  Instead, Defendants cite work-product protection only in cases in which they

20  *also* assert attorney-client privilege.  As the Court finds that some of the emails listed above

21  are attorney-client privileged (and thus immune from discovery), it need not address

22  whether work-product protection also applies or whether Plaintiffs make a substantial

23  showing of need sufficient to override that protection.

24         **E.     Defendants' assertions of deliberative process privilege are
               inadequate, because the communications in question are neither
25             "predecisional" nor "deliberative."**

26  _____

27         [4]"The attorney-client privilege may be divided into eight essential elements: '(1) Where
    legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such,
28  (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6)
    are at his instance permanently protected (7) from disclosure by himself or by the legal adviser,
    (8) unless the protection be waived.'"  In re *Grand Jury Investigation*, 974 F.2d at 1071 n.2.

United States District Court

For the Northern District of California

1    As this Court's Order of May 12 pointed out, and as Defendants concede, the

2  deliberative process privilege protects only communications that are both "predecisional"

3  and "deliberative."  (Dkt 275, at 6:16-18.)  An agency invoking the privilege must "identify a

4  specific decision to which the document is predecisional' in order to successfully assert the

5  deliberative process privilege."  *L.H. v. Schwarzenegger*, 2007 WL 2009807, at *4 (E.D.

6  Cal. June 6, 2007) (quoting *Maricopa Audobon Soc'y v. United States Forest Serv.*, 108

7  F.3d 1089, 1094 (9th Cir. 1997)).  The privilege only applies to "significant policy decisions,"

8  *Chao v. Mazzola*, 2006 WL 2319721, at *1 (N.D. Cal. Aug. 10, 2006), rather than factual

9  material.   *See* In re *McKesson Governmental Entities Average Wholesale Price Litigation*,

10  264 F.R.D. 595, 601 (N.D.Cal., 2009) (Judge Spero) ("[f]actual material generally is not

11  considered deliberative").

12    This Court has already found that Defendants failed to identify a policy decision as to

13  which the communications at issue related, and afforded them leave to substantiate their

14  claims in a Privilege Log.  (Dkt. 280.) Both versions of Defendants' Privilege Log fail to

15  identify specific decisions to which the listed emails are "predecisional," so the Court must

16  rely on assertions in Defendants' supplemental opposition instead.  Defendants' opposition

17  proposes three predicate "decisions" for these emails.

18    " . . . the issue before CMS [Centers for Medicare and Medicaid Services]
     was the effect of section 12306.1(d)(6) on ARRA's maintenance of effort
19     provision . . . ."

20    " . . .  the issue was whether the reduction of the cap on the State's
     contribution toward wages and benefits would violate the ARRA."
21
22    " . . . emails and documents withheld by State defendants relate to these
     issues raised by CMS and SEIU [Plaintiff union] and how best to respond to
     those issues."
23

24  (Defs.' Supp. Opp. 7:5-19.)

25    As suggested by Defendants' choice of words, all but the last of these are *issues*

26  (unsettled questions, assessments of a state of affairs, or determinations of fact), rather

27  than *decisions* (determinations or conclusions based on analysis or reflection).  Even the

28  last "decision" proffered by Defendants (evaluating "how best to respond") does not clearly

   qualify, since Defendants do not state whether any determination was made or whether

United States District Court

For the Northern District of California

1    Defendants actually decided to respond in any particular way.  In the absence of an actual

2    predicate decision to which these materials were "predecisional," Defendants' claims of

3    deliberative process privilege fail.

4          The Court in its May 12 Order previously pointed out these deficiencies to

5    Defendants, and warned that waiver of privilege may occur when a party fails to provide

6    adequate descriptive and evidentiary support for each withheld document or item of

7    information for which privilege is claimed.  *Clarke v. American Commerce Nat'l Bank*, 974

8    F.2d 127, 129 (9th Cir.1992).  *See also United States v. Construction Products Research,*

9    *Inc.,* 73 F.3d 464, 473 (2d Cir.1996)(claim of privilege may be rejected where claimant

10   provides deficient privilege log).  Given Defendants' repeated failures to substantiate their

11   claims of privilege, the Court finds that the deliberative process privilege is waived.  As

12   such, Defendants are ordered to produce the materials for which deliberative process

13   privilege is invoked as the sole protection, within ten days of issuance of this order.

14   **F.    The Court orders production of other materials for which
          Defendants' claims of privilege are insufficient.**

15          Plaintiffs complain that in addition to the issues raised above, the Privilege Log

16   contains evidence that Defendants have withheld non-privileged materials.

17          First, Plaintiffs argue, the "draft" Privilege Log had substantial gaps in its Bates

18   numbers, indicating omissions.  Second, items in the "draft" Privilege Log were deleted

19   from the Amended Privilege Log.  Third, the Log and Index show that Defendants claim

20   attorney-client privilege for documents that were neither sent to nor received by an

21   attorney.  Finally, Plaintiffs note that the Privilege Log shows that materials marked

22   "privileged" were in fact shared with (or authored by) third parties, triggering a waiver of

23   privilege.

24          Defendants offer an explanation for the first two problems (gaps in Bates numbers

25   and the deleted entries in the amended log): the first Log was a draft, and Defendants had

26   been ordered to itemize individual emails rather than list entire email "threads" or

27   conversations.  The process of weeding out irrelevant materials and deleting duplicate

28   email threads resulted in deletion of irrelevant matter and gaps in the Bates numbering.

1    This would be convincing were it not for the descriptions that Defendants provided

2    for materials in the draft Privilege Log that were ultimately deleted from the Amended Log.

3    The draft log listed items with descriptions that seem relevant to disputed claims in this

4    case, for example:

5    •   Draft Log #24. "Letter re: application of American Recovery and Reinvestment

6        Act (ARRA)."

7    •   Draft Log p. 70, item 1. "IHSS wage reductions and impact on increase to

8        Medicaid FMAP."

9    Plaintiffs' concerns that relevant materials have been removed from the Amended

10   Privilege Log are justified.  As a result, the Court  orders production of the materials

11   referenced as #24, #213, ¶. 44-45 & 70-71 of the "draft" Privilege Log. Defendants do not

12   even respond to the third problem identified by Plaintiffs: numerous entries marked

13   "attorney-client privileged" that did not involve an attorney as either sender/drafter or

14   recipient.  Defendants also barely address the fourth problem (invoking privilege for non-

15   confidential communications sent to, or received from, third parties), merely pointing out

16   that one of the third-party individuals actually worked for the State at the time the suit was

17   filed.   The Court rules that Defendants have waived privilege as to these items (listed in

18   Pltfs.' Supp. Brief at 4-5.) They shall be produced within ten days of issuance of this order.

19   **G.    The Privilege Log lacks sufficient detail for the Court to assess the remaining claims of privilege.**

20   There are numerous claims of attorney-client privilege outstanding.  That is, the

21   Court lacks sufficient information either to accept the claim of privilege or to discard that

22   claim completely.  Defendants have dragged their heels and ignored the Court, but finding

23   blanket waiver of attorney-client privilege for the balance of the Log entries is a drastic

24   remedy.  The Court accordingly, for the last time, orders production of a new Log, under

25   penalty of waiver if it is (again) found deficient.

26   **V.    Conclusion**

27   Defendants meet their burden of asserting attorney-client privilege for only 18 emails

28   out of nearly 800 for which they claim privilege.  The Court denies the motion to compel

production of these materials.

1    Defendants again fail to identify any of their decisions to which the deliberative

2  process privilege would apply, so the Court deems this privilege waived with respect to the

3  approximately 150 emails for which it is offered as the sole protection. The Court grants

4  Plaintiffs' motion to compel production of these materials, within ten days of issuance of this

5  order.

6    Defendants' Privilege Log does not furnish enough detail to weigh the remaining

7  claims of privilege.  The Court orders Defendants to produce an adequate Privilege Log

8  within 20 days or face waiver of all privilege claims at that time.

9  **VI.    Parties' Joint Statement re Defendants' Request to Take Additional Depositions**

10

11    This dispute was presented to the Court in a document e-filed at Docket # 388. The

12  Court finds this matters suitable for submission without oral argument under Civil Local

13  Rule 7-1(b). The parties met and conferred in person to no avail. Defendants request that

14  this Court allow for the deposition of the named plaintiffs (including the union plaintiffs),

15  their IHSS providers, and a representative sample of the other declarants.

16  **A.    Argument**

17    Defendant Fresno County and Fresno County In-Home Supportive Services Public

18  Authority ("Fresno County") and Defendants Governor Arnold Schwarzenegger, David

19  Maxwell- Jolly and John Wagner ( "State Defendants") request this Court to enlarge the

20  number of depositions beyond the limit in Rule 30 of the Federal Rules of Civil Procedure.

21  Currently, there are 10 individual named plaintiffs and four union plaintiffs. Plaintiffs have

22  submitted more than 75 non-plaintiff declarations and identified another 50+ individuals in

23  discovery who have information regarding their claims. Plaintiffs relied heavily on these

24  declarations in obtaining injunctive relief (twice) and class certification. Defendants argue

25  that due process and fundamental fairness require that the number of depositions be

26  enlarged so that Defendants may evaluate the sufficiency of the claims, including the

27  factual statements made by Plaintiffs and their providers.

28    Plaintiffs have offered to stipulate to an increase in the current deposition limit from

10 depositions to 15 depositions to avoid this dispute. Defendants have taken no

United States District Court
For the Northern District of California

1   depositions to date. Plaintiffs ask the Court to find that Defendants cannot make a

2   particularized showing that they need more than 15, nor show that the discovery would not

3   be cumulative and duplicative. Many of the IHSS consumers are elderly and disabled

4   individuals for whom depositions are a greater burden. If Defendants can demonstrate after

5   taking some depositions that they have a genuine need for more, the parties may meet and

6   confer and take the matter up with the Court at that time, if necessary.

7          Plaintiffs argue that Defendants cannot show such genuine need now because,

8   although this case is barely one month from the fact discovery cut-off, they have taken no

9   depositions to date and have not even noticed any depositions. Defendants chose not to

10  depose any of the named plaintiffs at the class certification stage (where such discovery

11  was perhaps most relevant), and for months have simply let pass dates on which Plaintiffs

12  made named plaintiffs available for deposition. Defendants now suggest that they skipped

13  these opportunities "because they need to know the number they may take before selecting

14  deponents."

15         **B.      Analysis**

16         A party seeking to exceed the presumptive limit on the number of depositions set

17  forth in Fed. R. Civ. P. 30(a)(2)(A)(i) "is required to make a particularized showing as to

18  why the "additional depositions are necessary." *Zeinali v. Raytheon Co.*, 2008 WL

19  4820993, at *1 (S.D. Cal. Nov. 3, 2008). Leave to take additional depositions shall be

20  granted only "to the extent consistent with Rule 26(b)(2)." Fed. R. Civ. P. 30, see also id.,

21  adv. comm. notes, 1993 amdts. Thus, leave will not be granted where "the discovery

22  sought is unreasonably cumulative or duplicative," or where "the burden or expense of the

23  proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(i).

24         The Court acknowledges that there are hundreds of thousands of IHSS providers

25  and consumers impacted by this case, and that it is neither possible nor necessary for

26  every such potential witness to be deposed in advance. That a party may "have to face trial

27  witnesses and declarants without having first deposed them does not amount to a

28  particularized showing [for exceeding the limitation on the number of depositions] as

contemplated by the FRCP." *Finazzo v. Hawaiian Airlines*, 2007 WL 1425241, at *3 (D.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

Haw. May 10, 2007). ("Rule 30(a)(2)(A) clearly contemplates that a party has already taken ten depositions before a motion is filed seeking leave of court for a proposed deposition that would result in more than ten depositions being taken under this rule." (quotation marks and citation omitted)). *Finazzo*, 2007 WL 1425241; see also *Brooks v. Motsenbocker Advanced Developments, Inc.*, 2008 WL 2033712, 4 (S.D.Cal. 2008)

> "Here, Plaintiffs have not presented good cause at this time for leave to take more than 10 depositions. First, Plaintiffs bring this motion 3 weeks before the discovery cutoff, and before they have taken any depositions. . . Second, because they have not yet taken any depositions, Plaintiffs cannot make a particularized showing for why the additional depositions are necessary."

Defendants in this case do not specify the total number of depositions they seek to take, asking instead only for the right to depose the named plaintiffs, all their providers, and a "representative sample of the other declarants." Plaintiffs and their IHSS providers would result in 32 depositions (34 if Plaintiffs' pending motion to amend, which adds a new IHSS consumer plaintiff, is granted). That number does not include Rule 30(b)(6) depositions of the four union plaintiffs or the unspecified "representative sample" of other declarants. Defendants do not explain how all these proposed depositions would even take place in the short time remaining for fact discovery, while still allowing Plaintiffs their right to take depositions.

**C.   Conclusion and Order**

The Court finds that deposing half of the named Plaintiffs and half of their providers would require 16 depositions and along with the 30(b)(6) depositions of the four unions which are currently in the case would add up to a total of 20 depositions, twice the limit set by the Rule. If Defendants choose initially to depose one or more of the declarants in this case, instead of a named Plaintiff, they may do so.

Accordingly, Defendants' request to take additional depositions is granted in part. Defendants may take a total of 20 depositions, as discussed above. If this proves to be insufficient, Defendants may meet and confer with Plaintiffs, and then return to the Court, to make the required particularized showing why more depositions are needed.

1          IT IS SO ORDERED.

2     DATED: August 25,  2010

3

4                                             _____
                                              JAMES LARSON
                                              United States Magistrate Judge

5     G:\JLALL\CASES\CIV-REF\09-2306\Order 344.wpd

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California