1  STEPHEN P. BERZON (SBN 46540)
   SCOTT A. KRONLAND (SBN 171693)
2  STACEY M. LEYTON (SBN 203827)
   PEDER J. THOREEN (SBN 217081)
3  ANNE N. ARKUSH (SBN 254985)
   Altshuler Berzon LLP
4  177 Post Street, Suite 300
   San Francisco, California 94108
5  Telephone: (415) 421-7151
   Facsimile: (415) 362-8064
6  sberzon@altshulerberzon.com
   skronland@altshulerberzon.com
7  sleyton@altshulerberzon.com
   pthoreen@altshulerberzon.com
8  aarkush@altshulerberzon.com

9  Attorneys for Plaintiffs

10

11                 UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
12              SAN FRANCISCO/OAKLAND DIVISION

13
   LYDIA DOMINGUEZ, et al.,          )  Case No.: C 09-02306 CW
14                                    )
                Plaintiffs,           )  **NOTICE OF MOTION AND MOTION**
15                                    )  **FOR PRELIMINARY APPROVAL OF**
                                      )  **CLASS SETTLEMENT AGREEMENT**
16          v.                        )  **AND FOR AN ORDER DIRECTING**
                                      )  **NOTICE TO THE CLASS, SCHEDULING**
17  EDMUND G. BROWN, et al.,          )  **A FAIRNESS HEARING, AMENDING**
                                      )  **THE CLASS CERTIFICATION ORDER,**
18                                    )  **AND DISMISSING CERTAIN**
                                      )  **DEFENDANTS; MEMORANDUM OF**
19                                    )  **POINTS AND AUTHORITIES IN**
                                      )  **SUPPORT OF MOTION**
20                                    )
                                      )  Hearing Date:   April 4, 2013
21                                    )  Time:           2:00 P.M.
                                      )  Judge:          Hon. Claudia Wilken
22                                    )  Address:        1301 Clay Street
                                      )                  Oakland, CA 94612
23                                    )  Courtroom:      2, 4th Floor
                                      )
24  _____

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................iii

NOTICE OF MOTION AND MOTION.......................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES..................................................................2

I.      INTRODUCTION AND SUMMARY OF SETTLEMENT...................................................2

II.     PROCEDURAL HISTORY ...............................................................................................3

        A.     Litigation Against the State Defendants....................................................3

        B.     Litigation Against the Fresno County Wage Reduction...........................6

        C.     Stay of Proceedings & Settlement ...........................................................7

III.    DESCRIPTION OF SETTLEMENT PROVISIONS.........................................................7

IV.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE UNDER
       RULE 23(e) ....................................................................................................................8

        A.     The Settlement is the Product of Serious, Informed, Non-collusive Negotiations
              Conducted by Experienced Counsel.........................................................9

        B.     The Settlement Fairly and Adequately Addresses the Concerns Underlying the
              Litigation and Provides Similar Benefits to All Similarly Situated Class
              Members .................................................................................................10

        C.     The Settlement is Reasonable in Light of the Risks of Further Litigation and
               Other Factors .........................................................................................11

V.     THE PROPOSED CLASS NOTICE AND PROCEDURE FOR APPROVAL ARE
       APPROPRIATE UNDER FED. RULE OF CIV. PROC. 23(e)(1). ...............................12

        A.     The Proposed Settlement Notice Provides Appropriate Information to Class
              Members in Easily Understandable Language. ....................................12

        B.     The Process for Distribution of Class Notice is Reasonably Calculated to Reach
              Class Members.

             1.     The Settlement Provides For Widespread Dissemination of the Notice
                  Materials. ...................................................................................13

             2.     Individualized Notice Should Not Be Required .......................13

        C.     The Settlement Approval Process Provides Adequate Opportunity for Class
               Members to Raise Objections or Comment on the Settlement...........16

VI.    PLAINTIFFS' OTHER REQUESTED RELIEF SHOULD BE GRANTED...................17

        A.     State Defendants Brown and Chiang Should Be Dismissed. ...............17

i

B.      The Class Certification Order Should Be Amended to Modify the Class Definition Based on Changed Factual Circumstances. ........................................................ 17

VII.      CONCLUSION ............................................................................................................ 18

Motion For Preliminary Approval Of Class Action Settlement,
Case No. C 09-02306 CW

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Bourlas v. Davis Law Associates*,
  237 F.R.D. 345 (E.D.N.Y.2006)...........................................................................9

4

*Dominguez v. Schwarzenegger*,
  596 F.3d 1087 (9th Cir. 2010) ..............................................................................4

5

6

*Douglas v. Independent Living Ctr. Of S. Cal., Inc.*,
  132 S. Ct. 1204 (2012) ......................................................................................5, 11

7

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*,
  55 F.3d 768 (3rd Cir.1995) ...................................................................................8

8

*Handschu v. Special Services Division*,
  787 F.2d 828 (2d Cir. 1986) ...............................................................................15

9

10

*Hanlon v. Chrysler Corp*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................8

11

*Hawker v. Consovoy*,
  198 F.R.D. 619 (D.N.J. 2001) .............................................................................18

12

13

*Kaplan v. Chertoff, No. Civ. 06-5304*,
  2008 WL 200108 (E.D. Pa. Jan. 24, 2008)...........................................................15

14

*Managed Pharmacy Care v. Sebelius*,
  705 F.3d 934 (9th Cir. 2012) ...............................................................................11

15

16

*Officers for Justice v. Civil Serv. Commission of the City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .....................................................................9, 10, 11

17

*Olmstead v. L.C. ex rel. Zimring*,
  527 U.S. 581 (1999) .........................................................................................4, 14

18

19

*Walsh v. Great Atlantic & Pac. Tea Co., Inc.*,
  726 F.2d 956 (3d Cir. 1983) ................................................................................15

20

21

22

## DOCKETED CASES

23

*Oster v. Lightbourne*,
  Case No. 09-4668 CW (N.D. Cal.)...............................................................*passim*

24

## FEDERAL STATUTES

25

42 U.S.C. §12132 ........................................................................................................4

26

42 U.S.C. §1396a(a)(30)(A) ...............................................................................*passim*

27

29 U.S.C. §794 ...........................................................................................................4

28

**FEDERAL RULES**

Fed. R. Civ. P. 23 ..........................................................................................*passim*

Fed. R. Civ. P. 41 ................................................................................................2, 17

**STATE STATUTES**

Cal. Welfare & Institutions Code §12306.1 ...........................................................*passim*

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on April 4, 2013 at 2:00 p.m.[1] or on such date and time as may be set by the Court, Plaintiffs will move for preliminary approval of a proposed settlement reached between Plaintiffs and the State Defendants.  This motion is based on this notice, the Memorandum of Points and Authorities and all documents and arguments submitted in support thereof, the record in this action, and whatever oral argument the Court may entertain.

**RELIEF SOUGHT:** Plaintiffs hereby request the following relief:

1.      Preliminary approval of the Class Action Settlement Agreement;

2.      Approval of the proposed form of Notice to the Class; and an order directing provision of Settlement Class Notice to the Class in accord with the Plan for Class Notice;

3.      An order setting a schedule for distribution of the Class Notice and for the Fairness Hearing.

4.      Amendment of the Class Certification Order (Dkt. #286) to modify the definition of the class based on changed circumstances; and

5.      Dismissal of State Defendants Governor Edmund G. Brown and Comptroller John Chiang.


Dated: March 28, 2013                              Respectfully submitted,

                                                   STEPHEN P. BERZON
                                                   SCOTT A. KRONLAND
                                                   STACEY M. LEYTON
                                                   PEDER J. THOREEN
                                                   ANNE N. ARKUSH
                                                   Altshuler Berzon LLP

                                                   By:    /s/ Stacey M. Leyton

                                                   Attorneys for Plaintiffs

---

[1] Plaintiffs are filing herewith an *ex parte* application for an order shortening time.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION AND SUMMARY OF SETTLEMENT**

After four years of hard-fought litigation regarding proposed cuts to the wages of In-Home Supportive Services ("IHSS") providers, including substantial discovery and appeals all the way to the United States Supreme Court, Plaintiffs and State Defendants have finally reached a mutually agreeable settlement that will end this protracted case.  The proposed settlement, which if approved by the Court will resolve both this case and the related case *Oster v. Lightbourne*, Case No. 09-4668 CW (N.D. Cal.) ("*Oster*"), was reached only after months of difficult discussions between the parties.[2]  The result is the product of arms-length negotiation and is, in the view of Class Counsel, in the best interests of the class.  *See* Leyton Decl. ¶9.

The settlement provides for the repeal of the IHSS provider wage reduction statute that was the subject of the litigation in this case, as well as the repeal of eligibility, service, and hours cuts that are the subjects of the *Oster* litigation.  As Plaintiffs have demonstrated in the abundant record before the Court, the wage cuts at issue here would have significantly impaired thousands of IHSS recipients' ability to find reliable, quality IHSS providers.  As a result, many of the State's most vulnerable populations would have seen their care deteriorate, and many would have suffered gaps in care.  As the Court held when granting Plaintiffs' request for a preliminary injunction, "consumers' quality of life and health-care [would have been] greatly diminished, which will likely cause great harm to disabled individuals."  Dkt. #131 at 10:28 – 11:3.  Although Plaintiffs have successfully prevented implementation of the wage cuts to date, they face a real risk that they could lose at trial or that, even if Plaintiffs win at trial, the verdict could be overturned by an appellate court or ultimately the United States Supreme Court.

In exchange for the repeal of the statute at issue here, Plaintiffs have agreed to an incremental reduction in hours provided to IHSS recipients.  Under the settlement, the State would

_____

[2] Although the settlement does not include the separately named Fresno County Defendants, Plaintiffs anticipate that the claims against those defendants will be dismissed without prejudice under Federal Rules of Civil Procedure 41 and 23(e).  However, that dismissal is not currently before this Court.

1    be permitted to reduce service hours by 8% for the period of one year.  This would effectively be a

2    4.4% reduction below current hours, given that there is a 3.6% reduction now in effect.

3    Thereafter, the State would restore 1% of total authorized service hours so that the total ongoing

4    reduction of service hours would be 7% (*i.e.*, effectively a 3.4% reduction below current hours).

5    But the State would be obligated to seek federal approval of a home care assessment that, if

6    approved by the federal government, would be used to restore the reduced hours.  While Plaintiffs

7    do not want to see *any* reductions in the IHSS program, settlement of the case in a manner that

8    permits these hours reductions is fair and reasonable in light of the potential impacts of the statute

9    they replace and the risks of litigation.

10          For all of these reasons, the proposed settlement easily satisfies the minimal standards

11    necessary for preliminary approval.  The Court should grant such approval, direct that notice be

12    provided to the class, and set a schedule for a fairness hearing and final settlement approval.  The

13    Court should also amend its class certification order (Dkt. #286) to modify the class definition

14    based on changed factual circumstances, and dismiss two State Defendants whose presence in the

15    case is unnecessary.

16    **II.     PROCEDURAL HISTORY**

17          **A.     Litigation Against the State Defendants**

18          In early 2009, the California Legislature enacted and then-Governor Arnold

19    Schwarzenegger signed an amendment to California Welfare & Institutions Code §12306.1(d)

20    ("Section 12306.1(d)(6)") that would have reduced the maximum IHSS provider rate that the State

21    would help fund from $12.10 per hour to $10.10 per hour ($9.50 in wages; $0.60 in benefits),

22    effective July 1, 2009.  *See* Dkt. #131 at 4.  In response to Section 12306.1(d)(6), fourteen

23    counties that were paying wages greater than $9.50 per hour submitted "Rate Change Requests" to

24    California Department of Social Services ("DSS"), seeking to reduce wages effective July 1, 2009.

25    All of these Rate Change Requests were approved by the relevant state agencies.  Still more

26    counties were likely to seek rate reductions in the weeks or months following July 1, 2009.

27

28

1    Plaintiffs, unions representing IHSS providers and individual IHSS consumers

2  representing a class of similarly situated consumers, filed this action on May 26, 2009.  The

3  complaint alleged that Section 12306.1(d)(6) was preempted by both the procedural and

4  substantive guarantees of the Medicaid Act provision requiring that provider rates be set at levels

5  adequate to ensure access to services and quality of care.  See 42 U.S.C. §1396a(a)(30)(A)

6  ("Section 30(A)").  Plaintiffs further alleged that the statute would cause unlawful discrimination

7  under the Americans with Disabilities Act ("ADA") and Rehabilitation Act, because the provider

8  rate reductions would force individuals with disabilities who are otherwise capable of living in

9  their own homes and communities into institutional facilities.  See 42 U.S.C. §12132; 29 U.S.C.

10  §794(a); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).

11    In June 2009, Plaintiffs moved to preliminarily enjoin Section 12306.1(d)(6).  The Court

12  granted the motion later that month on the ground that the Plaintiffs demonstrated a likelihood of

13  success on their claim that the challenged statute was preempted by Section 30(A) because the

14  State had reduced provider rates without evaluating the impact of the reductions on access to, and

15  quality of, IHSS services.  *See* Dkt. #131 at 7:21 – 10:23.  Additionally, the Court found that IHSS

16  providers and recipients would face immediate and irreparable harm if the statute were

17  implemented.  Dkt. #131 at 10:25 – 12:10.  In July 2009, the Court issued additional orders

18  clarifying and enforcing the preliminary injunction.  *See* Dkt. #171, 172, 202, 203.  State

19  Defendants appealed all of those orders.

20    In March 2010, after briefing and argument, the Ninth Circuit affirmed this Court's

21  preliminary injunction.  *Dominguez v. Schwarzenegger*, 596 F.3d 1087 (9th Cir. 2010).  The State

22  then sought and obtained Supreme Court review of a series of cases, including this one, involving

23  whether parties may enforce Section 30(A) of the Medicaid Act directly under the Supremacy

24  Clause.[3]

25

26  _____
   [3] Meanwhile, in October 2010, the California Legislature enacted Welfare & Institutions Code
27  §12306.1(d)(7), which suspended the implementation of Section 12306.1(d)(6) until July 1,
   2012, or the date upon which "a court of competent jurisdiction has issued an order, that is not

28

On February 22, 2012, the Supreme Court vacated the Court of Appeals' rulings in all of the consolidated cases and remanded them for reconsideration in light of the fact that the federal Center for Medicare and Medicaid Services ("CMS") had subsequently approved the cuts at issue in some of the cases. *Douglas v. Indep. Living Ctr. Of S. Cal., Inc.*, 132 S.Ct. 1204 (2012).  In light of these changed circumstances, the Supreme Court left it to the Ninth Circuit to decide, in the first instance, whether and how CMS approval might impact private litigants' ability to bring a Section 30(A) claim under the Supremacy Clause.  While this particular issue is not relevant to the present case, because the State neither sought nor obtained permission from CMS to implement Section 12306.1(d)(6), the Ninth Circuit's March 2010 judgment in this action was also vacated and remanded.  To date, the Ninth Circuit has taken no action after the Supreme Court's remand.[4]

While the appeal of the initial preliminary injunction was pending, Plaintiffs moved for class certification, which the Court granted in June 2010.  Dkt. #286.  The class – certified under Rule 23(b)(2) for declaratory and injunctive relief only – consists of consumers residing in counties that at the time of class certification paid over $9.50 per hour to IHSS providers and so would have been affected by Section 12306.1(d)(6):

> All In-Home Supportive Services consumers residing in Alameda, Calaveras, Contra Costa, Fresno, Marin, Mendocino, Monterey, Napa, Placer, Riverside, Sacramento, San Benito, San Francisco, San Luis Obispo, San Mateo, Santa Barbara, Santa Clara, Santa Cruz, Solano, Sonoma and Yolo counties.

Dkt. #286 at 17:7-9.  As to Plaintiffs' claims challenging Fresno County's rate reductions (discussed next), the Court certified a separate Rule 23(b)(2) subclass of "[a]ll In-Home Supportive Services consumers residing in Fresno County."  Dkt. #286 at 17:11-12.

---

subject to appeal or for which the time to appeal has expired, upholding [Section 12306.1(d)(6)'s] validity," whichever were to occur later.

[4] On March 26, 2013, Plaintiffs and State Defendants filed a joint request that the Ninth Circuit stay further proceedings, in light of the pending settlement.

1       After  class certification, five additional counties – Los Angeles, Madera, Mariposa, San

2   Joaquin, and Yuba – agreed to hourly wages over $9.50, and would thus be affected by the wage

3   cap imposed by Section 12306.1(d)(6).[5]  Leyton Decl. ¶3.

4       Additionally, during the pendency of the appeals, the parties engaged in substantial

5   discovery that has provided additional information to help them assess the strengths of their claims

6   and defenses.  For example, the parties took 23 depositions, including of state officials, individual

7   named plaintiffs, and representatives of the union plaintiffs.  Leyton Decl. ¶4.  State Defendants

8   produced approximately 10,000 pages of documents, while Plaintiffs produced thousands more.

9   *Id.*  Plaintiffs prosecuted a motion to compel and engaged in significant litigation before a

10   magistrate judge regarding the sufficiency of the discovery provided.  *See, e.g.*, Dkt. #269, 344,

11   391.   All of this was in addition to the unusually large record created by the parties in the course

12   of briefing Plaintiffs' requests for preliminary injunctive relief.

13       **B.**    **Litigation Against the Fresno County Wage Reduction**

14       Fresno County and the Fresno County In-Home Supportive Services Public Authority (the

15   "Fresno Defendants") are separately named defendants in this action, and litigation against Fresno

16   Defendants continued while State Defendants' appeal of the Court's preliminary injunction was

17   pending.  During litigation over the initial preliminary injunction in June 2009, Fresno Defendants

18   moved to sever the claims asserted against them and to dismiss them from the litigation.  In

19   October 2009, the Court denied both motions.  Dkt. #235.  After this Court preliminarily enjoined

20   the challenged statute, Fresno County and one other county informed State Defendants that they

21   still wanted their rate reduction requests to be implemented, but this Court modified its

22   preliminary injunction order to block those reductions.  Dkt. #203.

23       In May 2010, Fresno County submitted a new Rate Change Request seeking to reduce

24   IHSS provider wages to $8.00 per hour, the state minimum wage, which State Defendants

25

26   ————————————————
[5] Plaintiffs previously amended their complaint to add class allegations on behalf of IHSS
consumers in Madera County.  *See* Dkt. #403 ¶¶30, 75.  However, the class definition was not
amended at that time.

27

28

1 approved.  Plaintiffs sought a temporary restraining order enjoining implementation of that

2 reduction on the ground (among others) that its approval and implementation would be contrary to

3 the same Medicaid Act provision that led the Court to preliminarily enjoin implementation of

4 Section 12306.1(d)(6), *viz.*, Section 30(A), because again no study had been conducted regarding

5 the impact of the reduction on access and quality.  On June 29, 2010, the Court granted Plaintiffs'

6 motion.  Dkt. #371; *see also* Dkt. #375 & #376 (further explaining basis for TRO).  Because

7 Defendants declined the opportunity to litigate whether the temporary restraining order should be

8 converted into a preliminary injunction, the temporary restraining order has remained in effect.  As

9 a result of the TRO, the State officially rescinded its approval of Fresno County's Rate Change

10 Request and informed the county that it will have to submit a new request if it wishes to reduce

11 wages in the future.  *See* Dkt. #373, Exh. B.  To date, Fresno has not done so.

12        **C.**     **Stay of Proceedings & Settlement**

13       By agreement of the parties in light of the appellate proceedings, all proceedings in this

14 Court were stayed on March 2, 2011.  Dkt. #423.  That stay has remained in effect.  *See* Dkt. #442.

15 In the meantime, as discussed in greater detail *infra* at Part IV.B, Plaintiffs and State Defendants,

16 as well as the overlapping parties in the related case *Oster*, have negotiated an agreement that

17 settles all claims pending in both actions against State Defendants.  That agreement was executed

18 on March 27, 2013 and is attached to the Declaration of Stacey Leyton as Exhibit 2.

19 **III.**     **DESCRIPTION OF SETTLEMENT PROVISIONS**

20       The settlement is a "global" resolution of the claims against State Defendants in both this

21 and the *Oster* case.  Settlement Agreement, ¶1.  It has four key features.

22       **First**, Section 12306.1(d)(6), as well as the statutes challenged in *Oster*, will be repealed.

23 Settlement Agreement, ¶23 & Ex A thereto.

24       **Second**, instead of the cuts challenged, Plaintiffs will be subject to a time-limited reduction

25 in hours of 8%, beginning July 1, 2013.  Settlement Agreement, ¶12. The practical effect on class

26 members will be a reduction of 4.4% below current hours because a 3.6% reduction of hours is

27

28

currently in effect.  That 3.6% reduction sunsets on July 1, 2013, so the 8% cut will replace rather than adding to the 3.6% cut.  *Id.*, ¶14.

This reduction will decrease to 7% after twelve months, that is, on July 1, 2014. Settlement Agreement, ¶13.  This 7% reduction will be ongoing, except that State Defendants will be required to seek the additional revenues described in the next paragraph and to use those revenues to offset the reduction.

**Third**, State Defendants have agreed to pursue additional revenues for the IHSS program in the form of an assessment on home care services, including but not limited to home health care and IHSS.  *Id.*, ¶¶18-22, 24.  If that assessment is approved by the federal government, the savings generated must be used to restore the 7% reduction in IHSS hours.  *Id.*, ¶21 & Exh. A thereto.

**Fourth**, Defendants have agreed to clarify for recipients their right – notwithstanding the 8% and 7% reductions – to have their need for IHSS hours reassessed by county social workers, which may result in increases in their hours.  *Id.*, ¶16.  Defendants will explain this right in the official "Notice of Action" that will be sent to recipients informing them of the 8% cut. *Id.*, ¶17.

The Settlement Agreement also contains release and waiver terms that represent fair compromises between the parties.  As part of the settlement, class members will waive their right to file litigation challenging the 8% and 7% cuts in hours.  *Id.*, ¶33.  However, class members will retain their right to challenge any other reductions in IHSS eligibility, services, hours, or wages that take place after the Settlement Agreement was signed.  *Id.*

## IV.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE UNDER RULE 23(e)

Federal Rule of Civil Procedure 23(e) requires that any proposed settlement or compromise in a class action suit be submitted to the court for approval and determination that it is "fair, reasonable, and adequate."  The court may approve the settlement preliminarily, establishing an initial presumption of fairness.  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768 (3rd Cir.1995); *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Where a "proposed settlement appears to be the product of serious, informed, non-

collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class and falls within the reasonable range of approval, preliminary approval is granted."  *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y.2006) (internal citations omitted).

The standard by which a proposed settlement is to be evaluated is whether the settlement is fundamentally fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  This determination involves a balancing of factors, which may include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class Members to the proposed settlement.  The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.

*Id*. at 625 (internal citations omitted).

**A.     The Settlement is the Product of Serious, Informed, Non-collusive Negotiations Conducted by Experienced Counsel**

This case has been aggressively and effectively litigated by the parties, as set forth in more detail in the Procedural History, Part II, *supra.*  In May 2012, State Defendants and Plaintiffs began discussions regarding a potential settlement agreement to resolve the instant case as well as *Oster*.  Leyton Decl. ¶5.  Between May and August 2012, and then again beginning in February 2013, State Defendants and Plaintiffs held numerous in person and telephonic settlement discussions and exchanged multiple written proposals.  *Id.*, ¶¶5-6.  Discussions included direct participation of the directors of the relevant state agencies.  *Id.*

The Plaintiff class has been vigorously represented in the litigation and the settlement discussions by Class Counsel.  Counsel have devoted thousands of hours to this litigation, zealously advocating on behalf of class members (as well as the Union Plaintiffs) both in court and in the context of settlement discussions.  Meanwhile, State Defendants were represented by

9

1  the Office of the Attorney General and the Chief Counsel of DHCS who participated throughout

2  the settlement negotiations.  The parties to these negotiations had the benefit of an extensive court

3  record and substantial discovery upon which to evaluate their risks and likelihood of success.

4       There can be no dispute that the negotiations were serious, informed and non-collusive.[6]

5      **B.**    **The Settlement Fairly and Adequately Addresses the Concerns Underlying the Litigation and Provides Similar Benefits to All Similarly Situated Class Members**

6

7       Determination of adequacy of a settlement includes assessment of the degree to which the

8  primary concern of plaintiffs in filing the suit is addressed by the proposed agreement.  *Officers*

9  *for Justice*, 688 F.2d at 628.  The Settlement addresses the concerns that were the basis of

10  Plaintiffs' claims, provides significant relief to the Class, and disposes of all claims filed against

11  State Defendants.  Plaintiffs brought this suit to challenge drastic reductions to IHSS provider

12  wages, alleging that these reductions violated the Medicaid Act and would, in violation of the

13  ADA and Rehabilitation Act, result in unnecessary institutionalization of class members.  As the

14  Court found, those reductions would have caused "immediate and irreparable harm" to class

15  members, including harms "ranging from going hungry and dehydration, to falls and burns, to an

16  inability ever to leave the home."  Dkt. #131 at 10:25 – 11:10.  The Settlement permanently

17  eliminates this threat of provider wage cuts and the decline in quality of and access to care that

18  would result, and replaces them with hours reductions that are incremental and most likely

19  temporary.

20       Critically, the hours reductions negotiated under the settlement may expire in the relatively

21  near term if State Defendants secure legislative and federal approval of the home care assessment

22  and thereby raise revenue that must be used to restore the cut.  In contrast, the wage reductions

23  threatened by Section 12306.1(d)(6), along with their concomitant impact on IHSS recipients, had

24  no prospect of terminating.

25

_____
26  [6] Significantly, under the proposed settlement, both sides will bear their own fees and costs.  This eliminates entirely an issue – the question of class counsel's remuneration – that might otherwise

27  raise the possibility of an improperly collusive settlement.

28

Finally, the proposed Settlement is also fair in that this is a class action under Rule 23(b)(2) for declaratory and injunctive relief, not for money damages, and the relief afforded to named plaintiffs is not greater than that afforded to class members as a whole.

**C.      The Settlement is Reasonable in Light of the Risks of Further Litigation and Other Factors**

Significant in evaluating the reasonableness of a proposed settlement are the risks at trial for both sides, the costs of continuing the litigation, and the delay and/or preclusion in achieving the favorable results for class members that continued litigation, including appeals, would entail. *Officers for Justice*, 688 F.2d at 625.

The future viability of Plaintiffs' Supremacy Clause preemption claim, based on non-compliance with the requirements of Medicaid Section 30(A), is uncertain.  In *Douglas*, the Supreme Court asked the Ninth Circuit to reconsider whether such claims may be advanced in private litigation where CMS has approved the rate reduction at issue, and the four Justices to reach the issue would have held there is no cause of action.  More recently, in *Managed Pharmacy Care v. Sebelius*, 705 F.3d 934 (9th Cir. 2012), a panel of the Ninth Circuit held that CMS's approval of Medicaid provider rate cuts is entitled to deference, and in doing so appeared to interpret Section 30(A) more narrowly than under previous authority.  Although neither *Douglas* nor *Managed Pharmacy Care* directly undermines the Section 30(A) claim here, because the cut reflected in Section 12306.1(d)(6) has never been submitted to or approved by CMS, the Supremacy Clause issue presented by the instant case may ultimately be decided by the United States Supreme Court, with an uncertain outcome.

Additionally, the Court's order blocking implementation of Section 12306.1(d)(6) was premised on the State's failure to conduct a study examining the impact of that statute on the quality and access to care, as required by Section 30(A).  Dkt. #131.  At any time the State could attempt to remedy this defect by conducting such a study and reaffirming the rate reduction.  If the State were to do so, it is unclear whether Plaintiffs would prevail in demonstrating that the study

11

1  was inadequate or that the Legislature's reaffirmation of the rate reduction does not meet legal

2  requirements.

3         Finally, Plaintiffs face risks at trial, where they would be tasked with establishing, among

4  other things, that Section 12306.1(d)(6) would result in the unnecessary institutionalization of

5  IHSS recipients and therefore violates the ADA and Rehabilitation Act, as well as on appeal.

6         In sum, Plaintiffs faced significant risks going forward in this litigation.  As a result, class

7  members faced the risk that they would ultimately have to endure the significant harms identified

8  by the Court as a result of the implementation of Section 12306.1(d)(6).  Therefore, the proposed

9  settlement is reasonable.

10  **V.    THE PROPOSED CLASS NOTICE AND PROCEDURE FOR APPROVAL ARE
        APPROPRIATE UNDER FED. RULE OF CIV. PROC. 23(e)(1).**

11

12        **A.    The Proposed Settlement Notice Provides Appropriate Information to Class
              Members in Easily Understandable Language**

13        Rule 23(e)(1) of the Federal Rules of Civil Procedure requires that prior to final approval

14  of a class settlement, "[t]he court must direct notice in a reasonable manner to all class members

15  who would be bound by the proposal."  Generally, notices to class members must be "clearly and

16  concisely state[d] in plain, easily understood language."  Fed. R. Civ. P. 23(c)(2)(B).

17        The parties have prepared a three-page Class Notice and a one-page Flyer covering the

18  settlements in both this action and the *Oster* case, both of which concisely and accurately

19  summarize the major provisions of the proposed Settlement.  *See* Settlement Agreement, Exh. C

20  (the first three pages are the Class Notice; the fourth page is the Flyer).  The Notice meets

21  readability standards for people with a 6.2 grade education.  Leyton Decl., Exh. 3 at ¶17.  Both the

22  Notice and the Flyer provide a toll-free phone number, a P.O. Box and an email for class members

23  to contact counsel and direct class members to websites where they can obtain additional

24  information regarding the terms of the settlement, including the full settlement agreement itself.

25  *See id.*, Exh. 3 at ¶20.  Both the Notice and the Flyer inform class members of their right to object

26  to the terms of the settlement and the deadline for doing so.  The parties propose translating the

27  Notice into twelve languages in addition to English.  *See id.*, Exh. 3 at ¶20; Settlement Agreement,

28

Exh. C (plan for class notice).  For individuals who need accommodations due to their disabilities, the Notice will be available in alternative formats, such as electronic versions and tapes, as needed.  *See id.*

**B.     The Process for Distribution of Class Notice is Reasonably Calculated to Reach Class Members**

**1.     The Settlement Provides For Widespread Dissemination of the Notice Materials**

The parties have agreed upon a comprehensive plan for distributing the Notice, the Flyer, and the settlement agreement to help ensure that class members are informed of the terms of the settlement and their right to comment on it.  *See* Settlement Agreement, Exh. C (the plan of notice begins at the fifth page of Exhibit C).

The parties propose to distribute these materials as follows:

- CDSS and CDHCS will post all notice materials and the settlement agreement in English within 24 hours of entry of the Orders re Preliminary Approval of Class settlement in a prominent area of their respective websites.  The Notice will be posted in the additional languages as soon as these are translated and available.

- Disability Rights California, class counsel in *Oster*, will post the notice materials and the settlement agreement on its web site in a format that is accessible to recipients with visual impairments or who are blind who use screen readers, and upon request, will provide the notice in alternative formats, such as audio tapes, compact disks, and large print.

   Disability Rights California and at least some other class counsel in *Oster* will also post all of the settlement materials on their respective web sites.

- Union Plaintiffs (SEIU-United Healthcare Workers West, SEIU-United Long Term Care Workers, SEIU Local 521, SEIU California State Council, United Domestic Workers, AFSCME Local 3930, AFL-CIO, and California United Homecare Workers) will post

1    information regarding the settlement and the notice materials and the settlement agreement

2    (or a link to them) on their websites.[7]

3    • CDSS will request that county welfare departments display the Notice and Flyer in

4      prominent locations in each county welfare office waiting room and public area, and that

5      the office made the settlement agreement available upon request from the office

6      receptionist.

7    • CDSS will instruct employees in the State Hearing Division to display the Notice and

8      Flyer in prominent locations in each State Hearing Division office and waiting room.

9    • Finally, the parties will request that a vast array of stakeholders that regularly interact with

10     IHSS recipients and their advocates post, distribute, and/or make available the Notice and

11     Flyer.[8]

### 2. Individualized Notice Should Not Be Required

13    In light of the robust notice scheme described above and given that this case involves a

14 Rule 23(b)(2) class for declaratory and injunctive relief, individualized notice of the proposed

15 settlement to all class members should not be required.  Moreover, any negligible benefit gained

16 by providing such notice would be outweighed by the cost and delay that would be incurred.

---

[7] Additionally, as detailed in the Leyton Declaration at ¶¶12-18, the Union Plaintiffs intend to engage in wide-ranging outreach efforts to ensure that their members and the IHSS consumers with whom they work are informed of the terms of the Settlement.

[8] These entities include:  providers of Community-Based Adult Services; IHSS Public Authorities; County IHSS Advisory Committees; County Adult Protective Services; the California Council for the Blind; the California State Independent Living Organization; the California Olmstead Advisory Committee; the State Council on Developmental Disabilities; the Benchmark Institute; Health Consumer Action; the National Senior Citizens Law Center; the California Disability Community Action Network; the California IHSS Consumer Alliance; the California Association of Public Authorities; the California Collaborative for Long Term Services and Supports; the IHSS Coalition; the California Foundation of Independent Living Centers; People First of California; the California Network of Mental Health Clients; the Alzheimer's Association, California Council; the California Association for Health Services at Home; the California Association of Social Rehabilitation Agencies; The ARC of California; AARP; the Legal Aid Association of California – Senior Legal Services Provider Section; the California Association of Area Agencies on Aging; and the California Health Advocates - Health Insurance Counseling and Advocacy Programs.

1     For Rule 23(b)(3) classes, the Rules specifically require individualized notice "to all

2     members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

3     Individualized notice in such cases is important to ensure that class members have the opportunity

4     to opt out.  In contrast, for (b)(1) and (b)(2) classes, where class members cannot opt out, Rule 23

5     provides only that "the court may direct appropriate notice to the class."  Fed. R. Civ. P.

6     23(c)(2)(A).  The reason for the different treatment

> derives from the nature of the relief sought in these actions.  Rule 23(b)(1) and
> (b)(2) classes are cohesive in nature.  Because of this cohesiveness, an adequate
> class representative can, as a matter of due process, bind all absent class members
> by a judgment. . . .  Rule 23(b)(3) classes are less cohesive, and must abide by
> more stringent due process constraints.

10    *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 963 & n.1 (3d Cir. 1983) (citations

11    omitted).

12        Accordingly, "the form of notice of settlement of a Rule 23(b)(1) or (b)(2) class action

13    need only be such as *to bring the proposed settlement to the attention of representative class*

14    *members who may alert the court to inadequacies in representation, or conflicts in interest among*

15    *subclasses*, which might bear upon the fairness of the settlement."  *Id.* at 963 (emphasis added);

16    *see also Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("Because of the

17    common interests of all its members, a Rule 23(b)(2) class seeking declaratory and injunctive

18    relief is cohesive by nature, and *notice to a representative class membership may be considered*

19    *sufficient*." (Emphasis added; citation omitted)).  Courts have thus approved notice of proposed

20    settlements in (b)(1) and (b)(2) cases by means of "publication over a period of weeks in several

21    metropolitan New York newspapers" (*Handschu*, 787 F.2d at 833); publication in two newspapers

22    and posting in prisons in which potential class members were incarcerated (*Hawker v. Consovoy*,

23    198 F.R.D. 619, 621 & n.5 (D.N.J. 2001)); and posting on appropriate public websites and

24    dissemination through a network of community-based and non-profit organizations which work

25    with potential class members (*Kaplan v. Chertoff*, No. Civ. 06-5304, 2008 WL 200108, at *13

26    (E.D. Pa. Jan. 24, 2008)).  The proposed notice plan here, like the plans approved in the above

27    cases, is designed to reach a substantial number of class members and will amply ensure

28

1  awareness of the settlement by "representative class members" who can notify the Court of any

2  perceived deficiencies, thus satisfying the purposes of notice in a Rule 23(b)(2) injunctive relief

3  class.

4       Not only is individualized notice not required, it would be unnecessarily burdensome in

5  this case. First, the cost of providing individualized notice to the hundreds of thousands of class

6  members would be substantial. Leyton Decl., ¶11. The State has consistently claimed severe

7  financial hardship in this case, and the parties agree that the State's limited resources would be

8  better spent elsewhere (for example, for the benefit of IHSS recipients). Second, individualized

9  notice would delay the settlement approval process. State Defendants have informed Plaintiffs

10 that it would take approximately thirty days to send out individualized notices. Leyton Decl., ¶11.

11 In contrast, the proposed notice plan would post notice the day after preliminary approval is

12 granted. Because implementation of the proposed settlement must be coordinated with the rapidly

13 approaching timelines of the State's budget process, and the July 1 deadline for implementation of

14 the 8% cut provided for in the Settlement Agreement, this thirty-day delay in the settlement

15 approval process could impede the settlement. Therefore, the cost and delay involved in providing

16 individualized notice weigh strongly in favor of the proposed notice plan. *See Kaplan*, 2008 WL

17 200108, at *13 (approving notice plan without individualized notice in part because the delay

18 required by individualized notice would be contrary to "the time-sensitive nature of this case").

19      In sum, individualized notice of the proposed settlement to all class members should not be

20 required.

21      **C.    The Settlement Approval Process Provides Adequate Opportunity for Class
22           Members to Raise Objections or Comment on the Settlement**

23      As indicated above, a process for raising objections is set forth in the Class Notice, which

24 also informs class members about the methods for communicating any objections. Additionally,

25 the Notice informs class members of the date, time, and location of the proposed Fairness Hearing.

26 Class members have a reasonable time to respond to the proposed notice, pursuant to the

27 following proposed schedule:

28

|   | | |
|---|---|---|
| 1 | _____**April 4, 2013:** | Hearing re Preliminary Approval of Settlement and Class Certification. (2:00 p.m.) |
| 2 | | |
| 3 | _____**April 5, 2013** | Notice to be distributed and posted |
| 4 | _____**May 3, 2013:** | Last day for class members to mail objections to settlement agreement (four weeks). |
| 5 | _____**May 10, 2013:** | Parties to file Summary of Objections and Responses with the Court. |
| 6 | | |
| 7 | _____**May 23, 2013:** | Fairness Hearing (2:00 p.m.) |

**VI.      PLAINTIFFS' OTHER REQUESTED RELIEF SHOULD BE GRANTED**

    **A.      State Defendants Brown and Chiang Should Be Dismissed**

In the course of settlement discussions, State Defendants asked whether Plaintiffs would voluntarily dismiss Defendants Brown and Chiang pursuant to Federal Rule of Civil Procedure 41, because their presence in the case is unnecessary and State Defendants believe them to be improper defendants.  Plaintiffs have agreed to voluntarily dismiss these two Defendants, and must obtain court approval pursuant to Federal Rule of Civil Procedure 23(e) even though the dismissal is voluntary and not part of any settlement.

    **B.      The Class Certification Order Should Be Amended to Modify the Class Definition Based on Changed Factual Circumstances**

As previously explained, five counties agreed to raise wages above $9.50 since the class in this case was certified.  Because the class as originally constituted included all counties that then paid wages above $9.50, these changed factual circumstances support amendment of the class definition to add these counties.  This Court need not reconsider the Federal Rule of Civil Procedure Rule 23 factors, because this Court has already determined that residents of counties with wages above $9.50 are properly members of the class in this case.  *See* Dkt. #286 at 16 (accepting Plaintiffs' class definition because "[i]f the State were not enjoined, these counties would be impacted by the rate change").

## VII.   CONCLUSION

For the reasons discussed above, Plaintiffs request that the Court: 1) issue Preliminary Approval of the Class-Action Settlement; 2) approve the proposed Notice of Proposed Settlement and the process for distribution of the Notice; 3) establish a schedule for distribution of the Notice, handling of objections, and related filings; 4) set a date and time for the Fairness Hearing; 5) modify the class definition; and 6) dismiss Defendants Brown and Chiang.

Dated: March 28, 2013                                    Respectfully submitted,

STEPHEN P. BERZON
SCOTT A. KRONLAND
STACEY M. LEYTON
PEDER J. THOREEN
ANNE N. ARKUSH
Altshuler Berzon LLP

By:___/s/ Stacey M. Leyton

Attorneys for Plaintiffs